[No. S156986. Apr. 6, 2009.]

GIL N. MILEIKOWSKY, Plaintiff and Appellant, v.
WEST HILLS HOSPITAL AND MEDICAL CENTER et al., Defendants
and Respondents.

1260

1262

**COUNSEL**

Spiegel Liao & Kagay, Charles M. Kagay; Law Offices of Paul M. Hittelman and Paul Hittelman for Plaintiff and Appellant.

Davis, Cowell & Bowe and Andrew J. Kahn for Union of American Physicians and Dentists as Amicus Curiae on behalf of Plaintiff and Appellant.

Center for Constitutional Litigation, Valerie Nannery; The Arkin Law Firm and Sharon J. Arkin for American Association for Justice, Association of American Physicians & Surgeons, Consumer Attorneys of California, The E-Accountability Foundation, Government Accountability Project, Health Administration Responsibility Project, Inc., Health Care Patient Advocates, Legal Affairs Council, The Liberty Coalition, National Whistleblower Center, No Fear Coalition, OSC Watch, Semmelweis Society International and U.S. Bill of Rights Foundation as Amici Curiae on behalf of Plaintiff and Appellant.

Francisco J. Silva and Astrid G. Meghrigian for American Medical Association and California Medical Association as Amici Curiae on behalf of Plaintiff and Appellant.

Horvitz & Levy, David S. Ettinger, H. Thomas Watson; Fenigstein & Kaufman, Ron S. Kaufman and Nina B. Ries for Defendants and Respondents.

Manatt, Phelps & Phillips, Barry S. Landsberg and Terri D. Keville for Catholic Healthcare West and Tenet Healthcare Corporation as Amici Curiae on behalf of Defendants and Respondents.

Arent Fox, Lowell C. Brown and Patricia M. Kosich for Kaiser Foundation Health Plan, Inc., Kaiser Foundation Hospitals, The Permanente Medical Group, Inc., and The Southern California Permanente Medical Group as Amici Curiae on behalf of Defendants and Respondents.

Lois Richardson; Arent Fox, Lowell C. Brown and Patricia M. Kosich for California Hospital Association as Amicus Curiae on behalf of Defendants and Respondents.

Van Hall Law Offices and Suzanne F. van Hall as Amici Curiae on behalf of Defendants and Respondents.

Ware Law Group and Kimberly Ware as Amici Curiae on behalf of Defendants and Respondents.

## OPINION

**WERDEGAR, J.**—California's statutory peer review process, Business and Professions Code section 809 et seq., provides a physician with the right to a hearing for the purpose of reviewing a hospital peer review committee's recommendation to deny the physician's application for reappointment to staff privileges. A hearing officer may be appointed to preside at the hearing, but the officer is prohibited by statute from acting as a prosecutor or advocate or from voting on the merits. (Bus. & Prof. Code, § 809.2, subd. (b).)[1] The merits are determined by the trier of fact, often a panel drawn from other of the physician's peers. (*Id.*, subd. (a).) We conclude the hearing officer lacks authority to prevent a reviewing panel from reviewing the case by dismissing it on his or her own initiative before the hearing has been convened, and also lacks authority to terminate the hearing after it has been convened without first securing the approval of the reviewing panel. We therefore will affirm the judgment of the Court of Appeal.

## BACKGROUND

Dr. Gil N. Mileikowsky is a physician and surgeon board certified in obstetrics and gynecology. He had staff privileges to practice gynecology at

---

[1] Except as otherwise indicated, all further statutory references are to the Business and Professions Code.

West Hills Hospital and Medical Center (West Hills), an acute care facility. In May 2001, Dr. Mileikowsky applied for obstetrical privileges at West Hills and for renewal of his gynecological privileges. His applications were reviewed by a peer review committee, which recommended denial. The recommendation was submitted to West Hills's medical executive committee, which also recommended denial. Dr. Mileikowsky was given formal notice of the recommendation and the reasons for it: (1) he had failed to notify the medical staff that his privileges at another facility, Century City Hospital, had been terminated; (2) he had represented that he had voluntarily resigned from a third facility, the Encino-Tarzana Regional Medical Center, when in fact he had been summarily suspended;[2] and (3) he had attended a patient at West Hills and attempted to perform a caesarean section on her when he lacked obstetrical privileges and the patient had requested he stay away.

On May 23, 2002, Dr. Mileikowsky filed a timely request for a hearing, challenging the peer review committee's recommendation. Under West Hills's bylaws, hearings are held before a judicial review committee composed of members of the active staff (the reviewing panel). West Hills's medical executive committee appointed a hearing officer to preside over the hearing. The bylaws specify that hearings are to be held, if possible, no later than 45 days from the date a request for a hearing is received. In Dr. Mileikowsky's case, however, month after month went by without a hearing, largely because Dr. Mileikowsky refused to produce documents requested by West Hills, challenged the hearing officer's authority, and refused to comply with the officer's directions or orders. West Hills in the meantime amended its notice of the recommendation to include an allegation that Dr. Mileikowsky had failed to cooperate in West Hills's investigation of the actions taken against him by a fourth facility, Cedars-Sinai Medical Center. The amended notice referred to a report Cedars-Sinai had made to the Medical Board of California (Medical Board) and to the National Practitioner Data Bank, indicating Dr. Mileikowsky's privileges at that facility had been suspended for actions falling into the adverse action classification of "Incompetence/Malpractice/Negligence."

On February 5, 2003, after detailing the many complaints the parties had made about one another, including West Hills's complaint that Dr. Mileikowsky persistently refused to provide information relating to the action taken against him by Cedars-Sinai Medical Center, the hearing officer ordered Dr. Mileikowsky to produce the Cedars-Sinai documents, warning he would impose terminating sanctions should Dr. Mileikowsky fail to comply. Dr. Mileikowsky replied he would be occupied until March 14 with "other

---

[2] Dr. Mileikowsky's problems at the Encino-Tarzana Regional Medical Center are chronicled in *Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 531 [27 Cal.Rptr.3d 171].

matters" and would respond to the officer's order after that date. On March 18, 2003, the hearing officer wrote to the parties that he had received no further communication from Dr. Mileikowsky, ordered Dr. Mileikowsky to make arrangements to allow inspection and copying of the Cedars-Sinai documents by March 24, and again warned he would order terminating sanctions if Dr. Mileikowsky failed to comply.

Dr. Mileikowsky did not comply with the hearing officer's order. On March 27, 2003, the hearing officer issued an order dismissing Dr. Mileikowsky's request for a hearing, finding Dr. Mileikowsky's refusal to make the documents available prevented West Hills from prosecuting its case. In dismissing the proceedings, the officer invoked a provision in West Hills's bylaws providing that a physician who fails to request a hearing shall be deemed to have accepted the action involved, the action will become effective immediately, and the physician will be deemed to have waived all other rights inuring to him or her under the bylaws. The order thus declared that the dismissal constituted Dr. Mileikowsky's voluntary acceptance of the peer review committee's recommendation and that the recommendation therefore "shall become effective immediately." As a result of the order, no hearing was convened, and the matter was never submitted to the reviewing panel for decision.[3]

Dr. Mileikowsky appealed the order to West Hills's governing board. The board adopted the hearing officer's order, ruling Dr. Mileikowsky had been afforded a fair hearing in substantial compliance with the bylaws and that the officer's decision to dismiss the proceedings was reasonable, warranted, and supported by the weight of the evidence. Dr. Mileikowsky sought relief in the superior court by petition for a writ of administrative mandate. The superior court denied the petition. The Court of Appeal reversed, remanding the matter to the trial court with directions to enter a judgment directing West Hills and its medical staff (1) to set aside the governing board's decision, (2) to convene a hearing under the provisions of subdivision (c) of section 809.1, and (3) to conduct the hearing and any further proceedings in accordance with the provisions of section 809.2 et seq.

---

[3] West Hills cites a second provision of its bylaws that provides that a physician's failure to appear and proceed at the hearing shall be deemed to constitute voluntary acceptance of the recommendation or action involved and acts as a waiver of all other rights inuring to the physician under the provisions of the bylaws. But on this record, the only reason Dr. Mileikowsky failed to appear at the hearing was because the proceedings were dismissed by the hearing officer before a hearing was convened. In any event, whatever the provisions of the bylaws invoked, the order's effect was to dismiss the proceedings before the reviewing panel had any involvement in them.

## DISCUSSION

### I.

■ Decisions concerning medical staff membership and privileges are made through a process of hospital peer review. Every licensed hospital is required to have an organized medical staff responsible for the adequacy and quality of the medical care rendered to patients in the hospital. (Cal. Code Regs., tit. 22, § 70703, subd. (a); *Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 10 [56 Cal.Rptr.2d 706, 923 P.2d 1].) The medical staff must adopt written bylaws "which provide formal procedures for the evaluation of staff applications and credentials, appointments, reappointments, assignment of clinical privileges, appeals mechanisms and such other subjects or conditions which the medical staff and governing body deem appropriate." (Cal. Code Regs., tit. 22, § 70703, subd. (b); see Bus. & Prof. Code, § 2282.5; Cal. Code Regs., tit. 22, §§ 70701, 70703.) The medical staff acts chiefly through peer review committees, which, among other things, investigate complaints about physicians and recommend whether staff privileges should be granted or renewed. (*Arnett*, at p. 10.) In 1989, California codified the peer review process at Business and Professions Code section 809 et seq., making it part of a comprehensive statutory scheme for the licensure of California physicians and requiring acute care facilities such as West Hills to include the process in their medical staff bylaws. (§ 809, subd. (a)(8).)

The primary purpose of the peer review process is to protect the health and welfare of the people of California by excluding through the peer review mechanism "those healing arts practitioners who provide substandard care or who engage in professional misconduct." (§ 809, subd. (a)(6).) This purpose also serves the interest of California's acute care facilities by providing a means of removing incompetent physicians from a hospital's staff to reduce exposure to possible malpractice liability. (*Kibler v. Northern Inyo County Local Hospital Dist.* (2006) 39 Cal.4th 192, 199 [46 Cal.Rptr.3d 41, 138 P.3d 193]; *Arnett v. Dal Cielo, supra*, 14 Cal.4th at p. 12.)

Another purpose, also if not equally important, is to protect competent practitioners from being barred from practice for arbitrary or discriminatory reasons. Thus, section 809 recites: "Peer review, fairly conducted, is essential to preserving the highest standards of medical practice" (*id.*, subd. (a)(3)), but "[p]eer review that is not conducted fairly results in harm both to patients and healing arts practitioners by limiting access to care" (*id.*, subd. (a)(4)). Peer review that is not conducted fairly and results in the unwarranted loss of a qualified physician's right or privilege to use a hospital's facilities deprives the physician of a property interest directly connected to the physician's livelihood. (*Anton v. San Antonio Community Hosp.* (1977) 19 Cal.3d 802, 823

[140 Cal.Rptr. 442, 567 P.2d 1162].) As one author stated: "It is almost impossible for a physician to practice medicine today unless she is a medical staff member at one or more hospitals. This is because a doctor cannot regularly admit or treat patients unless she is a member of the medical staff. Privileges are especially important for specialists, like surgeons, who perform the majority of their services in a hospital setting. For this reason, a hospital's decision to deny membership or clinical privileges, or to discipline a physician, can have an immediate and devastating effect on a practitioner's career." (Merkel, *Physicians Policing Physicians: The Development of Medical Staff Peer Review Law at California Hospitals* (2004) 38 U.S.F. L.Rev. 301, 302–303.)

The effect of denying staff privileges extends beyond reducing or eliminating a physician's access to the denying facility. Section 805, subdivision (b) requires that hospitals report certain disciplinary actions, including denials of staff privileges, to the Medical Board. The Medical Board, which licenses physicians, must maintain a historical record that includes any reports of disciplinary information. (§ 800, subd. (a)(4); see *Arnett v. Dal Cielo, supra*, 14 Cal.4th at p. 11.) A hospital considering whether to grant or renew a physician's staff privileges must contact the Medical Board to learn if some other facility has reported a disciplinary action involving the physician. (§ 805.5, subd. (a).) And, as occurred here, a hospital usually is required to report disciplinary actions to the National Practitioner Data Bank, established for the purpose of tracking the activities of incompetent physicians. (42 U.S.C. § 11133(a).)[4] A hospital's decision to deny staff privileges therefore may have the effect of ending the physician's career.

■ The peer review process, while generally delegating responsibility to the private sector to monitor the professional conduct of physicians, establishes minimum protections for physicians subject to adverse action in the peer review system. (*Kibler v. Northern Inyo County Local Hospital Dist., supra*, 39 Cal.4th at p. 201; *Smith v. Selma Community Hospital* (2008) 164 Cal.App.4th 1478, 1484 [80 Cal.Rptr.3d 745].) Where, as here, a peer review committee recommends a "final proposed action" that will require a hospital to file a report with the Medical Board, the affected physician is entitled to notice and may request a hearing for the purpose of determining if the

---

[4] The cited section is part of the Health Care Quality Improvement Act of 1986, title 42 United States Code section 11101 et seq., enacted to respond to a "national need to restrict the ability of incompetent physicians to move from State to State without disclosure or discovery of the physician's previous damaging or incompetent performance" (42 U.S.C. § 11101(2)).

recommendation is reasonable and warranted. (§§ 809.1, subds. (a), (b), 809.3, subd. (b)(1), (2) & (3).) "The hearing shall be held, as determined by the peer review body, before a trier of fact, which shall be an arbitrator or arbitrators selected by a process mutually acceptable to the licentiate [i.e., the physician] and the peer review body, or before a panel of unbiased individuals . . . which shall include, where feasible, an individual practicing the same specialty as the licentiate." (§ 809.2, subd. (a).) ■ At the hearing, both parties have the right to call, examine, and cross-examine witnesses and to present and rebut evidence. (§ 809.3, subd. (a)(3), (4).) Upon the completion of the hearing, the parties are entitled to the written decision of the trier of fact, "including findings of fact and a conclusion articulating the connection between the evidence produced at the hearing and the decision reached." (§ 809.4, subd. (a)(1).) Under West Hills's bylaws, the reviewing panel is composed of no fewer than five members of the medical staff. A physician therefore has the right to have a second body of peers independently determine whether a peer review committee's recommendation to deny the physician's application for privileges is reasonable and warranted after considering not only the evidence that led to the peer review committee's findings, but also any additional evidence produced at the hearing.

## II.

■ Both the Business and Professions Code and West Hills's bylaws provide for the appointment of a hearing officer, but both also carefully limit the authority of the officer. If a physician requests a hearing, the code provides that the medical executive committee may, but need not, select a hearing officer to preside over the hearing to be held before the reviewing panel. (§ 809.2, subd. (b).) West Hills's bylaws confer authority on the officer to maintain decorum at the hearing and ensure that all parties have a reasonable opportunity to be heard and to present oral and documentary evidence. Both the statutory scheme and West Hills's bylaws caution that the hearing officer is not to act as a prosecuting officer or advocate, and both recite that the hearing officer "shall not be entitled to vote." (§ 809.2, subd. (b).) The reviewing panel resolves any conflicts in the evidence, determines its sufficiency, and determines the reasonableness of the recommended disciplinary action.

A hearing officer without the authority to determine sufficiency of the evidence may not entertain a motion to dismiss the proceedings for lack of evidence. (See *Frost v. State Personnel Board* (1961) 190 Cal.App.2d 1, 3–7 [11 Cal.Rptr. 718].) Here, while the hearing officer did not dismiss the proceedings for lack of evidence, by dismissing the proceedings before the hearing was convened the officer prevented the reviewing panel from considering the evidence and eliminated the reviewing panel's role in the decision-making process. Whether the hearing officer had the power to take such

action presents a question of law which we review de novo. (*Mileikowsky v. Tenet Healthsystem, supra*, 128 Cal.App.4th at p. 555; *Unnamed Physician v. Board of Trustees* (2001) 93 Cal.App.4th 607, 618–619 [113 Cal.Rptr.2d 309]; *Rosenblit v. Superior Court* (1991) 231 Cal.App.3d 1434, 1442–1444 [282 Cal.Rptr. 819].)

No provision in either the Business and Professions Code or West Hills's bylaws expressly confers authority on a hearing officer to issue terminating sanctions. West Hills, however, contends such authority is implicit in section 809.2, subdivision (d). That subdivision grants each party the right to inspect and copy relevant documentary information in the other party's possession. It then provides: "The failure by either party to provide access to this information at least 30 days before the hearing shall constitute good cause for a continuance. The right to inspect and copy by either party does not extend to confidential information referring solely to individually identifiable licentiates, other than the licentiate under review. The arbitrator or presiding officer shall consider and rule upon any request for access to information, and may impose any safeguards the protection of the peer review process and justice requires." (§ 809.2, subd. (d).)

In West Hills's view, a hearing officer's power to impose safeguards to protect the peer review process embraces the authority to issue terminating sanctions for a party's failure to comply with requests for information. But that the Legislature intended for section 809.2, subdivision (d) to confer on the hearing officer the power to impose sanctions beyond granting or denying continuances is dubious. After generally stating the right of each party to have access to information in the other party's possession, subdivision (d) addresses two situations. The first is that a party might fail to provide access to information. After identifying that possibility, subdivision (d) states that the failure to provide timely access "shall constitute good cause for a continuance." The second is that a document might contain confidential information relating to someone who is not a party to the proceedings. After identifying *that* possibility, subdivision (d) confers authority on the hearing officer to "rule upon any request for access to information, [and to] impose any safeguards the protection of the peer review process and justice requires." Read in context, the provision for imposing safeguards clearly seems directed to the situation in which the material a physician requests to inspect or copy includes confidential information related to physicians who are not parties to the proceedings; in that case, the statute authorizes the hearing officer to redact or otherwise limit the information to protect the confidentiality of the nonparty physicians while still protecting "the peer review process and justice" by providing the physician access to otherwise discoverable material.

While the statutory language seems clear, a broad interpretation of the officer's statutory powers might nonetheless be justified if granting the

hearing officer authority to issue terminating sanctions were consistent with the goals of the statutory review process and its allocation of responsibilities for reviewing a peer review committee's recommendation. But it is not. The purpose of providing a physician with a review of the peer review committee's recommendation is to secure for the physician an independent review of that recommendation by a qualified person or entity, here the reviewing panel. That purpose is defeated if the matter is dismissed before the reviewing panel becomes involved. Further, irrespective of a hearing officer's authority at the hearing or over the evidence adduced there, the officer, who "shall not be entitled to vote" (§ 809.2, subd. (b)), has no part in the decisionmaking process and no authority to prevent the reviewing panel from reviewing the recommendation. Yet, in effect, a hearing officer who prevents the reviewing panel from conducting its review "votes" by ensuring that the peer review committee's recommendation will be the final decision.

■ A physician's refusal to cooperate in an investigation of reported problems may support a recommendation that the physician's staff privileges be denied. (See *Webman v. Little Co. of Mary Hospital* (1995) 39 Cal.App.4th 592, 602–603 [46 Cal.Rptr.2d 90].)[5] However, it also is settled that a physician may not be denied staff privileges merely because he or she is argumentative or has difficulty getting along with other physicians or hospital staff, when those traits do not relate to the quality of medical care the physician is able to provide. (*Miller v. Eisenhower Medical Center* (1980) 27 Cal.3d 614, 627–629 [166 Cal.Rptr. 826, 614 P.2d 258]; *Rosner v. Eden Township Hospital Dist.* (1962) 58 Cal.2d 592, 598 [25 Cal.Rptr. 551, 375 P.2d 431].) For similar reasons, a physician's obstructiveness in connection with the reviewing process might, but will not necessarily, support a conclusion the physician is unable to function in a hospital setting. As it is the reviewing panel and not the hearing officer that determines whether the peer review committee's recommendation is warranted, it is the reviewing panel that should decide whether or not the physician's inability or refusal to engage in the reviewing process suffices to render any further proceedings unnecessary.

---

[5] In *Webman*, the peer review committee recommended denial of a physician's staff privileges for the physician's failure to cooperate in an investigation of an adverse action taken against him at another facility. The reviewing panel affirmed the recommendation. The court agreed, pointing out the hospital had reason to be concerned about the quality of care the physician might provide and was justified in denying privileges to the physician for his conduct in obstructing the investigation, conduct that made it difficult or impossible for the hospital to learn whether or not its concerns were well founded. (*Webman v. Little Co. of Mary Hospital, supra,* 39 Cal.App.4th at pp. 602–603.) The hearing officer apparently adopted the same reasoning here, concluding that Dr. Mileikowsky's failure to cooperate justified the recommendation to deny staff privileges. But whether Dr. Mileikowsky's conduct disclosed that he was unable to deliver high quality medical care at West Hills was a question for the reviewing panel, not the hearing officer.

■ We hold, therefore, that the hearing officer lacked authority to prevent the reviewing panel from fulfilling its statutory duty to review the peer review committee's recommendation to deny Dr. Mileikowsky's applications.[6]

## III.

■ The error was not in any way cured by Dr. Mileikowsky's subsequent appeal to West Hills's governing board and the board's affirmation of the hearing officer's order. Hospitals have a dual structure. The administrative governing body, which might not include health care professionals, takes ultimate responsibility for the quality and performance of the hospital. The hospital's medical staff evaluates staff applications and credentials, appointments, reappointments, and assignments of clinical privileges. (*Alexander v. Superior Court* (1993) 5 Cal.4th 1218, 1224 [23 Cal.Rptr.2d 397, 859 P.2d 96].) It is not inconceivable a governing body would wish to remove a physician from a hospital staff for reasons having no bearing on quality of care. In *Smith v. Selma Community Hospital, supra,* 164 Cal.App.4th 1478, for example, there was evidence suggesting a hospital's governing board might have sought to terminate a physician's privileges because the physician owned and operated clinics that competed with the hospital's corporate owner, or because of a lawsuit between the physician and the corporate owner arising from the owner's failed attempt to purchase the physician's clinics. (*Id.* at pp. 1489–1490, 1512–1513, 1517.) Accordingly, although a hospital's administrative governing body makes the ultimate decision about whether to grant or deny staff privileges, it does so based on the recommendation of its medical staff committee (*Alexander,* at pp. 1218, 1224), giving "great weight to the actions of peer review bodies . . ." (§ 809.05, subd. (a)). Here, the board gave *no* weight to the actions of *any* peer review body. It simply affirmed the hearing officer's order on its finding that Dr. Mileikowsky's prehearing conduct justified termination of the proceedings. This procedure violated both the letter and the underlying principles of the statutory peer review process.

## IV.

■ We are not unmindful of the burdens the hearing process imposes on busy practitioners who voluntarily serve on a reviewing panel. Our decision here should not be understood to mean the reviewing panel must involve itself in procedural or evidentiary issues. Neither do we intend to suggest the

---

[6] Nothing in our decision should be understood to limit the power of an arbitrator or panel of arbitrators to impose terminating sanctions when the arbitrator or panel of arbitrators is appointed under section 809.2, subdivision (a) to both preside over the hearing and determine the merits of the peer review committee's recommendation.

hearing officer lacks the power to preside over the hearing, including, as required by West Hills's bylaws, the power to maintain decorum and ensure that all participants in the hearing have a reasonable opportunity to be heard and to present oral and documentary evidence. But an order dismissing the proceedings is a far cry from a ruling on a procedural or evidentiary issue, and a reviewing panel is equally if not more qualified to determine when a party's refusal to cooperate has so interfered with the panel's ability to resolve the issues as to justify sanctions. We hold only that once a hearing has been requested, the review process may not be concluded without the reviewing panel's informed approval. *Mileikowsky v. Tenet Healthsystem, supra,* 128 Cal.App.4th 531, therefore is disapproved to the extent it holds that a hearing officer without the approval of the reviewing entity may terminate a hearing as a sanction for the physician's conduct in disobeying orders or disrupting hearing sessions. (*Id.* at pp. 560–562.) But we have no complaint with the hearing officer's ruling in that case that the hearing would be recessed whenever Dr. Mileikowsky, who had reacted emotionally and yelled in reaction to a ruling, was " 'out of control' " (*id.* at p. 545), or the officer's ruling that the hospital could disclose to the reviewing panel that Dr. Mileikowsky had violated the officer's discovery orders (*id.* at p. 543).

We also are cognizant of the arguments that limiting a hearing officer's remedial power to granting continuances will encourage disruptive behavior and that unless a hearing officer has the power to impose sanctions, an obstructive physician may be able to extend the review process unreasonably, endangering the public health and welfare and forcing a facility's other practitioners to monitor the physician's actions until his or her appointment expires or the hearing is completed. The arguments raise legitimate concerns, but we are not convinced they justify allowing a hearing officer to impose terminating sanctions.

In the most severe cases, where the failure to take action may result in an imminent danger to the health of any individual, the physician's clinical privileges can be summarily suspended. (§ 809.5.) Even when there is no summary suspension, a physician generally would wish to have the hearing held as soon as possible, if only to resolve uncertainty about his or her status at the hospital. A delay in the proceedings will injure a physician economically when the physician's privileges have been denied, summarily suspended, or restricted, or if they expire without the physician's reappointment. In the present case, for example, Dr. Mileikowsky could not practice obstetrics at West Hills because he was never granted privileges for that practice. He was entitled to practice gynecology until his gynecological privileges expired, and he was allowed a 60-day extension of those privileges, but even that extension expired long before the hearing officer dismissed the proceedings. And, that a physician's staff privileges expire in the absence of

reappointment protects the hospital against the possibility a physician whose work is substandard could forever impede the hospital's ability to deliver quality medical care.[7]

In addition, section 809.6, subdivision (a) authorizes hospitals to develop their own procedures and provides that parties to peer review proceedings "are bound by any additional notice and hearing provisions contained in any applicable professional society or medical staff bylaws which are not inconsistent with [the statutory peer review process]." A hospital therefore has power through its bylaws to provide additional protections against obstructive behavior. Thus, although we conclude a hearing officer may not on his or her own initiative dismiss the proceedings, we see no reason why a hospital might not create through its bylaws a simplified procedure that would allow a reviewing panel to consider and adopt a hearing officer's recommendation that the proceedings be dismissed for a physician's failure to cooperate. And a reviewing panel reasonably could infer from a physician's failure to provide information that the information in question is unfavorable or tends to show the physician cannot or will not cooperate with others and for that reason may be unwilling or unable to function effectively in a hospital setting.

Finally, we question West Hills's assertion that it could not proceed without evidence only Dr. Mileikowsky could provide. West Hills's peer review committee, as a result of an informal investigation, determined grounds existed for denying or refusing to extend staff privileges to Dr. Mileikowsky. West Hills presumably had some evidence to support the peer review committee's allegations. It had no need for information possessed by Dr. Mileikowsky to establish the validity of the allegation that he had failed to notify the medical staff his privileges at Century City Hospital had been terminated or the allegation that he had misrepresented that his resignation from Encino-Tarzana Regional Medical Center had been voluntary. Similarly, West Hills did not need Dr. Mileikowsky's evidence to substantiate the allegation that Dr. Mileikowsky had attended a patient at West Hills and had prepared to perform a caesarean section on her even though he lacked obstetrical privileges and she had requested he stay away. Nor did West Hills require information in Dr. Mileikowsky's possession to persuade the reviewing panel Dr. Mileikowsky had failed to cooperate in West Hills's investigation of the actions taken against him by the other hospitals. The validity of the allegation Cedars-Sinai Medical Center had reported Dr. Mileikowsky's

---

[7] We held in *Anton v. San Antonio Community Hosp., supra*, 19 Cal.3d 802, that a physician with staff privileges had a right to reappointment until the governing authorities determined after a fair hearing that the physician did not meet the reasonable standards of the hospital. (*Id.* at pp. 824–825.) We were not there confronted with a delay caused by the physician's failure to cooperate, and our remarks should not be construed to suggest a hospital is required to renew or extend an existing appointment when the proceedings are delayed by the physician's obstructive conduct.

privileges had been suspended for actions falling into the adverse action classification of "Incompetence/Malpractice/Negligence" is fully supported by the existence of the report itself, a document West Hills was required to, and did, obtain from the Medical Board. (§ 805.5.) There seems little reason to conclude Dr. Mileikowsky's refusal to provide information would have prevented West Hills from making its case had the hearing been held within the 45-day period set forth in West Hills's bylaws or the 60-day period contained in section 809.2, subdivision (h).

The code contains protections against the possibility a physician might attempt to obtain some advantage by refusing to reveal the nature of his arguments or supporting evidence until the hearing. For example, the hearing officer is entitled to consider a party's lack of cooperation when ruling on that party's own request for information. (§ 809.2, subd. (e)(4).) Initial applicants for hospital privileges may not introduce "information not produced upon request of the peer review body during the application process, unless the initial applicant establishes that the information could not have been produced previously in the exercise of reasonable diligence." (§ 809.3, subd. (b)(2).) In all cases, the hearing officer, as indicated, has the power to grant a continuance if a party fails to provide access to information in that party's possession. (§ 809.2, subd. (d).) A party's failure to disclose the identity of a witness or produce copies of documents the party expects to submit at the hearing at least 10 days before the hearing also is good cause for a continuance. (§ 809.2, subd. (f).) Similarly, section 809.2, subdivision (h), which requires that a hearing be commenced within 60 days after receipt of the request for a hearing and that the peer review process be completed within a reasonable time, creates an exception when the physician fails to comply with the obligation to allow inspection and copying of documentary information.

## V.

In sum, we are not persuaded the power granted the hearing officer to "impose any safeguards the protection of the peer review process and justice requires" (§ 809.2, subd. (d)) includes authority to terminate the peer review process without the reviewing panel's approval, or that the interests of the people of California and their medical facilities to preserve the highest standards of medical practice cannot be protected without implying such authority into the statutory scheme. It follows that the hearing officer's order dismissing the proceedings was unauthorized. And, as decisions relating to clinical privileges are generally the province of a hospital's peer review bodies and not its governing body (but see § 809.05, subds. (b) & (c)), West Hills's governing board similarly lacked the authority to ratify the order of dismissal.

We therefore affirm the judgment of the Court of Appeal.

George, C. J., Chin, J., Moreno, J., and Corrigan, J., concurred.

**KENNARD, J.,** Dissenting.—Plaintiff physician Gil N. Mileikowsky applied for obstetrical privileges and renewal of gynecological privileges at defendant West Hills Hospital and Medical Center in Los Angeles County. Defendant's medical executive committee recommended a denial for these reasons: (1) plaintiff failed to disclose termination of his staff privileges at Century City Hospital in Los Angeles County; (2) plaintiff misrepresented that his resignation from Encino-Tarzana Regional Medical Center in Los Angeles County was voluntary; and (3) plaintiff attempted to perform a caesarean section on a patient at defendant hospital when he lacked obstetrical privileges there and ignored the patient's request that he not treat her.

When plaintiff thereafter asked for a hearing, defendant hospital appointed an attorney as a hearing officer, as well as a reviewing panel consisting of defendant's active physician members.

In the ensuing statutorily authorized discovery process, which spanned eight months, plaintiff repeatedly refused numerous requests for access to documents related to the revocation of his staff privileges at Cedars-Sinai Medical Center. Twice, the hearing officer issued an order for production of those documents, to no avail. Eventually, the hearing officer imposed, for plaintiff's noncompliance and abuse of the peer review process, the sanction of terminating the proceedings.[1] The majority holds that the hearing officer lacked the authority to do so. I disagree.

## I.

Pertinent here is Business and Professions Code section 809.2, subdivision (d). That provision governs the discovery obligations and rights of the

---

[1] This is the third case in which a termination sanction has been imposed against plaintiff for willful abuse of discovery obligations to produce documents. Just four years ago, in *Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 262 [26 Cal.Rptr.3d 831], the Court of Appeal upheld a trial court order terminating, as a sanction, plaintiff's civil lawsuits against Tenet Healthsystem, Encino-Tarzana Regional Medical Center, and numerous individuals. And in *Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 531 [27 Cal.Rptr.3d 171], disapproved by the majority here (maj. opn., *ante,* at p. 1273), the same Court of Appeal panel upheld a hearing officer's sanction of terminating a hospital peer review proceeding for, among other things, plaintiff's noncompliance with orders to produce documents relating to Cedars-Sinai Medical Center's termination of plaintiff's medical staff privileges—the same information that plaintiff refused to furnish here—and disruptions of the peer review hearing sessions by yelling, disobeying the hearing officer's rulings, and using abusive language against witnesses, the hearing officer, and others. (*Mileikowsky,* at pp. 542–552.)

physician and the peer review body.[2] It states that breach of those obligations is "good cause" for a continuance of the hearing, and provides that the discovery right does not extend to disclosure of confidential information regarding licensed personnel other than the physician in question. It then states: *"The arbitrator or presiding officer shall consider and rule upon any request for access to information, and may impose any safeguards the protection of the peer review process and justice requires."* (§ 809.2, subd. (d), italics added.)[3] The majority construes that provision as authorizing a hearing officer only to grant continuances and to redact or otherwise limit disclosure of confidential information relating to nonparties. (Maj. opn., *ante*, at p. 1270.) I do not share that overly restrictive interpretation.

In my view, the provision's critical phrase is the one that I have just italicized, stating that, in ruling on "any request for access to information," the hearing officer "may impose any safeguards" to protect the peer review process and to advance justice. On its face, this is language granting expansive authority, not language restricting authority.

According to the majority, however, the provision's last sentence, which permits the hearing officer to " 'impose any safeguards the protection of the peer review process and justice requires,' " refers only to that provision's penultimate sentence, which pertains to "the situation in which the material a physician requests to inspect or copy includes confidential information related to physicians who are *not* parties to the proceedings . . . ." (Maj. opn., *ante*, at p. 1270, italics added.) In that situation, the majority states, subdivision (d)'s last sentence "authorizes the hearing officer to redact or otherwise limit the information to protect the confidentiality of the nonparty physicians while . . . providing the physician access to otherwise discoverable material." (Maj. opn., *ante*, at p. 1270.) But that interpretation is inconsistent with the rest of

---

[2] The definition of "peer review body" includes the medical staff of a health care facility. (Bus. & Prof. Code, § 805, subd. (a)(1)(A).) If a physician requests a hearing concerning a hospital's proposed action to deny staff privileges, a hearing is held before either an arbitrator or a panel that is mutually acceptable to the physician and the "peer review body."

[3] Business and Professions Code section 809.2, subdivision (d), provides: "The licentiate shall have the right to inspect and copy at the licentiate's expense any documentary information relevant to the charges which the peer review body has in its possession or under its control, as soon as practicable after the receipt of the licentiate's request for a hearing. The peer review body shall have the right to inspect and copy at the peer review body's expense any documentary information relevant to the charges which the licentiate has in his or her possession or control as soon as practicable after receipt of the peer review body's request. The failure by either party to provide access to this information at least 30 days before the hearing shall constitute good cause for a continuance. The right to inspect and copy by either party does not extend to confidential information referring solely to individually identifiable licentiates, other than the licentiate under review. The arbitrator or presiding officer shall consider and rule upon any request for access to information, and may impose any safeguards the protection of the peer review process and justice requires."

the statutory language that the hearing officer's power to take appropriate action to protect the peer review process and to advance justice applies to "*any request* for access to information" (Bus. & Prof. Code, § 809.2, subd. (d), italics added), not just those involving nonparty physicians.

To not allow a hearing officer presiding over a peer review proceeding to impose a termination sanction for a party's egregious abuse of the discovery process would undermine the hearing officer's ability to control recalcitrant parties and curb flagrant abuses of the statutory discovery process. Contrary to the majority's assertion (maj. opn., *ante*, at p. 1271), such authority would not interfere with the reviewing panel's task of determining whether the physician possesses the requisite professional competence or qualifications. The sanctioning power at issue is aimed at protecting the integrity of the peer review process. Just as a court has the power to order dismissal as a sanction for egregious abuse of the discovery process (Code Civ. Proc., §§ 2023.010, subd. (d), 2023.030, subd. (d)), so too should a hearing officer presiding over a peer review proceeding have the power to impose a termination sanction. In either instance, great leeway is necessary to control parties who deliberately flout orders for discovery compliance. Without such authority, a physician who is the subject of a peer review proceeding can, through obstructive conduct, unduly delay the statutorily required reporting to the Medical Board of California of an unfavorable decision. (Bus. & Prof. Code, § 805, subd. (b).)

In summary, I am of the view that a hearing officer presiding over a peer review proceeding does have the power to impose a sanction of terminating the proceeding, but only in egregious circumstances. This case fits into that category, as discussed below.

## II

I summarize the events leading up to the hearing officer's order to terminate the peer review proceeding as a sanction for plaintiff's willful noncompliance with rulings and orders made in the discovery process:

1. On July 16, 2002, the hearing officer wrote to the parties to complete the exchange of documents so that a hearing could be scheduled.

2. On July 17, the attorney for defendant hospital's medical staff wrote to plaintiff stating that the medical staff had not received documents relating to actions taken against plaintiff by Cedars-Sinai Medical Center and that continued failure to produce the documents would result in amending the charges to include a failure to cooperate.

3. On July 29, plaintiff wrote back, stating that he would respond by August 5.

4. On August 21, after plaintiff had failed to respond, the medical staff amended the notice of charges to include plaintiff's refusal to cooperate in defendant hospital's investigation of plaintiff's suspension from Cedars-Sinai Medical Center. As the majority notes, the "amended notice referred to a report Cedars-Sinai had made to the Medical Board of California (Medical Board) and to the National Practitioner Data Bank, indicating Dr. Mileikowsky's privileges at that facility had been suspended for actions falling into the adverse action classification of 'Incompetence/Malpractice/Negligence.' " (Maj. opn., *ante*, at p. 1265.)

5. On September 3, plaintiff wrote to the hearing officer that he would not be able to respond to the amended charge until September 10.

6. On October 3, the medical staff notified the hearing officer that plaintiff still had not furnished the requested Cedars-Sinai Medical Center documents, and it requested the hearing officer to order plaintiff to comply.

7. On November 27, the medical staff wrote to the hearing officer that plaintiff's failure to provide the Cedars-Sinai Medical Center documents made it difficult to set a formal hearing date.

8. On December 6, the hearing officer ordered the parties to exchange by January 10, 2003, all information and documents requested.

9. On January 6, 2003, the medical staff notified the hearing officer that plaintiff had furnished some of the requested documents, but not the Cedars-Sinai Medical Center documents.

10. On January 12, plaintiff wrote to the medical staff demanding reinstatement of his privileges and stating that he had provided releases authorizing defendant hospital and Cedars-Sinai Medical Center to exchange information.[4]

11. On January 14, the medical staff notified the hearing officer that the requested Cedars-Sinai Medical Center documents were in the possession of either plaintiff or his counsel, and it asked that the peer review proceeding be terminated.

---

[4] The majority suggests that whatever evidence defendant hospital still needed after the investigation, it could obtain that information from sources other than plaintiff. (Maj. opn., *ante*, at pp. 1274–1275.) What the majority overlooks is defendant hospital's right to discovery *from plaintiff*. (Bus. & Prof. Code, § 809.2, subd. (d).) In addition, at oral argument, counsel for defendant hospital mentioned that a hospital lacks subpoena power and that Cedars-Sinai Medical Center, which had suspended plaintiff, did not respond to defendant hospital's request for information pertaining to the suspension.

12. On February 5, the hearing officer determined that plaintiff had failed to respond to the various requests for information he was required to produce, that the Cedars-Sinai Medical Center documents were clearly relevant, and that plaintiff's refusal to produce those documents was "deliberate and intentional." The hearing officer, however, denied the medical staff's request that termination of the peer review proceedings be imposed as a sanction, but he did order plaintiff to produce the documents at issue and advised him that failure to comply would lead to termination of the peer review proceeding.

13. Plaintiff then informed the hearing officer that he would respond after March 14.

14. On March 18, when plaintiff still had not complied, the hearing officer ordered plaintiff to respond by March 24 and told him that failure to do so would lead to an order terminating the proceedings.

15. On March 27, when plaintiff still had not responded, the hearing officer, in a 12-page decision, imposed the termination sanction. The decision noted: "The record reflects that the Medical Staff made many requests for this documentary information and many orders were made by the hearing officer directing Dr. Mileikowsky to produce such documents. Dr. Mileikowsky did not comply with these orders to produce documentary information. Dr. Mileikowsky failed to comply with many orders made by the hearing officer in this matter, involving such disparate issues as improper *ex parte* communications, manner and delivery of notices, motions and briefs and other procedural [and] substantive . . . orders seeking civility and courtesy. Dr. Mileikowsky advised the hearing officer on several occasions that he had a right to ignore the hearing officer's orders."

As summarized above, the record before this court shows that plaintiff repeatedly ignored the dates set to produce the documents requested. It was only when plaintiff disobeyed the hearing officer's order for production of the requested documents that the termination sanction was imposed. Plaintiff's egregious abuse of the discovery process justified that sanction.[5]

---

[5] Business and Professions Code section 809.2, subdivision (d), specifically states that the "peer review body," that is, the medical staff (see fn. 2, *ante*), "shall have the right to inspect and copy at the [medical staff's] expense any documentary information relevant to the charges which the [physician] has in his or her possession or control as soon as practicable after receipt of the [medical staff's] request."

The aim of the discovery process is to ferret out the truth and thus promote justice. This goal underlies Business and Professions Code section 809.2, subdivision (d), which governs the discovery rights and obligations of the physician and the peer review body. This is apparent from the provision's phrase that, in ruling "upon any request for access to information," the hearing officer "may impose any safeguards the protection of the peer review process *and justice* requires." (*Ibid.*, italics added.) To not allow a hearing officer to impose a sanction of terminating a peer review proceeding for a party's egregious abuse of the discovery process would make a mockery of the Legislature's statement I just quoted.

I would reverse the judgment of the Court of Appeal.

Baxter, J., concurred.

Respondents' petition for a rehearing was denied June 17, 2009, and the opinion was modified to read as printed above. Kennard, J., and Baxter, J., were of the opinion that the petition should be granted.