Filed 10/30/19

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| NOVARRO C. STAFFORD, | B288008 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BS160519) |
| v. | |
| ATTENDING STAFF ASSOCIATION OF LAC + USC MEDICAL CENTER, | |
| Defendant and Appellant. | |


APPEAL from a judgment of the Superior Court of Los Angeles County.  Mary H. Strobel, Judge.  Affirmed.

John D. Harwell for Defendant and Appellant.

Steven Trolard for Plaintiff and Respondent.

_____

The Attending Staff Association of LAC + USC Medical Center (Association) appeals from a judgment granting a writ of mandamus against it. Respondent Novarro C. Stafford is a physician whose clinical privileges were terminated by the Association. Stafford requested an administrative hearing. The administrative process began, but the Association subsequently took the position that Stafford withdrew or abandoned his right to an administrative hearing through his communications and conduct and by filing an unsuccessful action in superior court.

Stafford filed a petition for a writ of mandate seeking an order directing the Association to complete Stafford's administrative proceeding. The trial court granted the petition. We affirm.

The Association argues that, because Stafford filed an action in superior court before concluding the administrative appeal process, he forfeited his administrative remedy as a matter of law. The argument misinterprets the doctrine of exhaustion of administrative remedies. That doctrine precludes premature lawsuits; it does not mean that filing a premature lawsuit necessarily waives an administrative remedy.

The Association also makes the factual argument that Stafford withdrew his request for an administrative hearing. The trial court found against the Association on that claim. That finding is supported by substantial evidence, and we therefore must affirm.

## BACKGROUND

**1.    The Suspension of Stafford's Clinical Privileges**

Stafford is an anesthesiologist who was employed by the County of Los Angeles (County), working at the LAC + USC Medical Center (Medical Center). At the time of the relevant

2

events Stafford was over 80 years old and had enjoyed staff privileges at the Medical Center for over 30 years. The Association is responsible for providing such privileges.

On September 16, 2013, a female patient filed a written complaint claiming that Stafford had acted inappropriately and made her feel uncomfortable during an examination. On February 7, 2014, the Director of Health Services of Los Angeles County informed Stafford by letter that his clinical privileges had been summarily suspended "[i]n accord with the bylaws of the . . . Association." The stated reason was "to reduce the substantial likelihood of imminent impairment to patient health and safety." Stafford received a "referral to the Well-Being Committee and requirement of a neurocognitive examination, to be completed no later than sixty days and coordinated through the Well-Being Committee."

The Association subsequently terminated Stafford's privileges on the ground that he failed to submit a timely neurocognitive evaluation.[1] Stafford appealed the decision and requested an administrative hearing.

**2.    Initiation of the Administrative Proceedings**

In September 2014, James Lahana was appointed as hearing officer for the administrative hearing. Counsel for Stafford and for the Association corresponded concerning voir dire of Lahana and various discovery issues.

_____

[1] Stafford disputed this ground, claiming that the Well-Being Committee refused to postpone a meeting to permit Stafford's union representative to attend. The dispute is not material.

3

In November 2014, Stafford requested retirement from the County.

Also in November 2014, new counsel for Stafford, Steven Trolard, wrote to the Association advising it that Stafford intended to file a civil suit. Trolard claimed that the Association's failure to schedule a prompt hearing was a breach of its bylaws, permitting recourse to the court.

Trolard participated in voir dire, but subject to an objection "to the subject matter jurisdiction of the peer review procedure itself." Trolard's e-mail explaining his objection stated, "I do not see any requirement that Dr. Stafford subject himself to the peer review process before a civil suit can be filed since Dr. Stafford has taken retirement."

On March 26, 2015, Trolard sent several e-mails to the Association's counsel, John Harwell. Trolard's first e-mail requested an appointment to see Stafford's employment file, proposing a date of April 7, 2015, for the inspection. A follow-up e-mail changed the proposed date to April 15, 2015. In the follow-up e-mail, Trolard also stated, "In our last meeting you said you would be dismissing the matter since Dr. Stafford is no longer an employee of LA USC+. [¶] Please go ahead and dismiss the matter."

In his declaration in support of Stafford's writ petition, Trolard explained that this statement referred to an earlier conversation he had with Harwell after the voir dire of Lahana. Trolard testified that, in that conversation, Harwell told him that "since Dr. Stafford had taken retirement from the County of Los Angeles, the . . . Association would consider dismissing the allegations against Dr. Stafford."

4

Although Trolard sent his March 26 e-mail only to Harwell, Lahana wrote a letter dated April 7, 2015, to Trolard and Harwell stating that he had seen the March 26 correspondence. The letter asked whether Trolard was "authorizing dismissal of Dr. Stafford's medical staff appeal" since Stafford was no longer a Medical Center employee. Lahana wrote another letter to Trolard dated May 26, 2015, stating that he had not received a response to his April 7 letter and requesting "clarification as to whether Dr. Stafford is affirmatively withdrawing his appeal." Trolard testified in his declaration that he never received those letters.

### 3. Stafford's Civil Suit

On June 2, 2015, Stafford filed a civil action against the County, the Medical Center, and various individuals alleging employment discrimination, breach of the covenant of good faith and fair dealing, and negligence. One of the named defendants filed a demurrer and a motion to strike under the anti-SLAPP statute (Code Civ. Proc., § 425.16).[2] Stafford dismissed his action on August 18, 2015, before a ruling on those pending motions.

### 4. Stafford's Attempt to Proceed with the Administrative Process

On July 28, 2015, Trolard sent an e-mail to Lahana stating that his "client, Dr. Novarro C. Stafford, wants to proceed with the appeal forthwith." Lahana responded on August 4, 2015, with a letter to Trolard and Harwell. The letter referred to Lahana's prior letters of April 7 and May 26. Lahana stated that

---

[2] Subsequent undesignated statutory references are to the Code of Civil Procedure.

he had not received a response to those letters and that "[c]onsequently, I construed Mr. Trolard's silence as an abandonment by Dr. Stafford of the administrative hearing process required under the Bylaws." Lahana requested that the parties "provide their respective positions and provide a response as to the issue of whether the appeal should be deemed dismissed based upon Mr. Trolard's email of March 26, 2015 requesting dismissal of the appeal."

Trolard responded the next day, explaining that Lahana had misinterpreted his March 26 e-mail. Trolard said that his statement was "not an independent, stand alone request for dismissal of the appeal." He explained that "Mr. Harwell told me that since Dr. Stafford had retired the suspension and appeal may be moot and he would be looking into dismissing the summary suspension of Dr. Stafford. I then told Mr. Harwell that if the Suspension is dismissed there is no basis for the appeal." He requested that "the appeal process proceed as soon as possible."

Neither Lahana nor the Association ever purported to dismiss or close the administrative appeal. However, the appeal process did not proceed any further.

5.    **Stafford's Writ Petition**

On February 8, 2016, Stafford filed a petition for a writ of mandate pursuant to section 1085, seeking an order requiring the Association, the County, and the University of Southern California to "complete the peer review process" or show cause

6

why they have not done so.[3]  The Association and the County opposed the petition, arguing that Stafford had withdrawn or abandoned his right to an administrative hearing.

Following oral argument on November 2, 2017, the trial court adopted its tentative ruling granting the petition.  The trial court's ruling rejected the Association's argument that Stafford's decision to file the civil action constituted an abandonment of the administrative proceeding.  The court acknowledged the requirement in the Association's bylaws that a party " 'exhaust all the remedies afforded by these bylaws before resorting to any legal action.' "  The court concluded that this requirement provided a *defense* to a premature legal action, but did not mean that a civil suit "acts as a forfeiture of a pending administrative appeal."

The court also rejected the Association's argument that Stafford's conduct during the prehearing activities amounted to an abandonment of the administrative proceedings under the Association's bylaws.  The court noted that the Association's bylaws state that a requesting party's failure to " 'appear or proceed' " at a requested hearing " 'shall be deemed to constitute voluntary acceptance of the recommendations or actions involved which shall become final and effective immediately.' "  The court interpreted this provision to apply only when a party fails to

---

[3] In the alternative, the petition sought a ruling that Stafford "is not required to exhaust the peer review hearing process before resorting to the courts."  The trial court denied that relief, and Stafford has not appealed that ruling.

7

appear at an actual hearing, which was never scheduled in this case.

In addition, the court found that Stafford did not fail to appear or proceed even if the term "hearing" were interpreted more broadly. The court credited Trolard's testimony that he did not receive Lahana's April 7 letter. And, even though the court found sufficient evidence that Lahana's May 26 letter was sent to Trolard by e-mail, the court noted that the letter did not provide any notice that a failure to respond would result in dismissal or abandonment of the case. The court cited *Lee v. Blue Shield of California* (2007) 154 Cal.App.4th 1369, 1375, for the principle that a decision whether a doctor has forfeited the right to a hearing " 'must be made by the hearing panel in the course of the [Business and Professions Code section] 809 hearing itself after affording the doctor notice and an opportunity to be heard.' "

Finally, the trial court rejected the Association's argument that Trolard actually requested dismissal of his appeal through his March 26, 2015 e-mail. The court reasoned that, if Stafford had intended the e-mail to dismiss his administrative appeal, he would have sent the e-mail to Lahana as well as to opposing counsel. The court also noted that the reference to " 'matter' " in the e-mail was vague. And the court credited Trolard's testimony that his e-mail referred to his previous conversation with Harwell in which Harwell had "informed him that since [Stafford] had taken retirement, the [Association] would consider dismissing the allegations" against Stafford.

The court's ruling was incorporated into a formal judgment ordering the Association "to complete the administrative appeal of the suspension and termination of the clinical staff privileges" of Stafford.

**DISCUSSION**

## 1. Standard of Review

A "traditional" writ of mandate under section 1085 is a "method for compelling a public entity to perform a legal and usually ministerial duty." (*Klajic v. Castaic Lake Water Agency* (2001) 90 Cal.App.4th 987, 995 (*Klajic*).)[4]  A trial court reviews an administrative action under section 1085 "to determine whether the agency's action was arbitrary, capricious, or entirely lacking in evidentiary support, contrary to established public policy, unlawful, procedurally unfair, or whether the agency failed to follow the procedure and give the notices the law requires." (*Ibid.*)

On appeal, we review the trial court's factual findings underlying its decision to issue a writ under the substantial evidence standard.  (*Klajic, supra,* 90 Cal.App.4th at pp. 995–996;

---

[4] The trial court properly issued its writ under the authority of section 1085 rather than under section 1094.5. Section 1094.5 applies where a writ "is issued for the purpose of inquiring into the validity of any final administrative *order* or *decision* made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal, corporation, board, or officer." (§ 1094.5, subd. (a), italics added.)  Here, there was no final administrative order or decision, but rather a refusal to proceed to a hearing. "[S]ection 1085 anticipates the arbitrary or improper refusal by an association to hold a hearing and authorizes resort to a writ of mandate to compel such a hearing." (*Haller v. Burbank Community Hospital Foundation* (1983) 149 Cal.App.3d 650, 658.)

*City of San Diego v. San Diego City Employees' Retirement System* (2010) 186 Cal.App.4th 69, 78.) We independently review legal questions. (*Klajic*, at pp. 995–996; *San Diego*, at p. 78.)

## 2. Stafford Did Not Abandon His Administrative Remedy By Filing a Civil Action

The Association's primary argument on appeal is that the doctrine of exhaustion of administrative remedies now precludes Stafford from obtaining any administrative relief. In essence, the Association contends that Stafford's decision to file a civil action before concluding the administrative proceedings constituted an abandonment of the administrative proceedings as a matter of law.

The Association cites no authority supporting that contention. The purpose of the exhaustion doctrine also does not support it.

The doctrine that a party must exhaust his or her administrative remedies before pursuing a judicial proceeding is based on considerations of efficiency. The doctrine "serves the salutary function of eliminating or mitigating damages" if an organization can quickly recognize through its internal procedures that it has committed error; it accords "recognition to the 'expertise' of the organization's quasi-judicial tribunal," and, even if the administrative proceeding does not eliminate the need for a subsequent judicial action, it "will still promote judicial efficiency by unearthing the relevant evidence and by providing a record which the court may review." (*Westlake Community Hosp. v. Superior Court* (1976) 17 Cal.3d 465, 476.) These purposes are unrelated to the question of whether filing a premature civil action causes forfeiture of pending administrative proceedings as a matter of law. If anything, the goals underlying the exhaustion

10

doctrine support the conclusion that one should not readily infer waiver. Those goals emphasize the value and importance of administrative proceedings. That emphasis is inconsistent with a rule that filing a civil suit waives administrative remedies even if a party did not intend to abandon the administrative proceeding.

And intent is generally the controlling principle in waiver analysis. (See *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 33–34 (*Waller*) [defining waiver as the intentional relinquishment of a right or acts that are so inconsistent with an intent to enforce a right as to induce a reasonable belief that the right has been relinquished].) A party's decision to file a judicial action might or might not reflect an actual intent to abandon pending administrative proceedings. The party might intend to seek a remedy only through the courts, or might intend to pursue both proceedings simultaneously. The doctrine of exhaustion of administrative remedies precludes pursuing a judicial remedy before the conclusion of an administrative proceeding, but it says nothing about a party's intention to abandon the administrative process.

The Association cites several cases in which the parties actually abandoned or failed to pursue administrative remedies *before* beginning a judicial action. (See *Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860; *Palmer v. Regents of University of California* (2003) 107 Cal.App.4th 899.) Those cases do not support the proposition that filing a civil action itself causes a party to relinquish the right to pursue administrative remedies.

*Page v. Los Angeles County Probation Dept.* (2004) 123 Cal.App.4th 1135, which the Association also cites, actually supports the conclusion that filing a civil action does not waive

11

administrative remedies.  The plaintiff in that case filed her lawsuit before obtaining a ruling from the Civil Service Commission concerning her employment claims.  The court held that her judicial action was barred, but suggested that she nevertheless could continue to pursue her administrative remedies:  "If the Commission's final decision is unsatisfactory to Page, then she must exhaust her judicial remedy by filing a petition for writ of administrative mandamus in the trial court. If she does not prevail in the writ proceedings, then the Commission's decision will be binding and defeat her [Fair Employment and Housing Act] claims.  If she does prevail in the writ proceedings, she *may ultimately obtain relief from the Commission.  Her FEHA claims may be time-barred, or the doctrine of equitable tolling may avoid that problem." (*Id.* at p. 1143, italics added.)

Stafford's decision to pursue a judicial remedy before completing the administrative process, while unwise, did not forfeit his right to pursue his administrative remedies as a matter of law.

3.     **Stafford Did Not Withdraw His Administrative Appeal**

On appeal, the Association does not renew the argument it made in the trial court that Stafford abandoned or waived his administrative rights through a lack of diligence or a failure to cooperate with the administrative process.  The Association correctly recognizes that under our Supreme Court's decision in *Mileikowsky v. West Hills Hospital & Medical Center* (2009) 45 Cal.4th 1259 (*Mileikowsky*) Lahana did not have the authority to

dismiss Stafford's administrative appeal on that basis.[5]  Thus, the Association concedes that "[o]nly the physician can withdraw his or her appeal."  However, it contends that "through Mr. Trolard, Dr. Stafford did."

The Association's argument that Stafford forfeited his administrative appeal rights therefore depends upon the factual issue of whether Trolard's March 26, 2015 e-mail was a request to abandon the administrative appeal.[6]

The trial court decided that issue against the Association. Its finding was based on substantial evidence.  Trolard testified in his declaration that the request in his March 26 e-mail to "please go ahead and dismiss the matter" referred to Harwell's

---

[5] In *Mileikowsky,* the court held that a hearing officer does not have the authority under the governing legislative scheme to dismiss a doctor's administrative appeal for a failure to cooperate.  (*Mileikowsky, supra,* 45 Cal.4th at pp. 1269–1273.) The court held that "once a hearing has been requested, the review process may not be concluded without the reviewing panel's informed approval."  (*Id.* at p. 1273.)  Here, there was no reviewing panel because the proceedings had not yet progressed to that point.

[6] Any argument that the Association properly terminated the administrative process on the ground that Stafford implicitly abandoned or waived his appeal would also founder on the holding in *Mileikowsky.*  (See *Mileikowsky, supra,* 45 Cal.4th at p. 1273.)  A decision by a hearing officer that a doctor's lack of diligence caused a waiver of the right to an administrative appeal would impinge on the doctor's right to a ruling by a reviewing panel in the same manner as a decision that an appeal should be dismissed for the doctor's failure to cooperate.  (*Id.* at pp. 1269–1270.)

13

prior statement that the Association would consider dismissing the *allegations* against Stafford in light of his retirement.  As the trial court noted, the circumstances of the communication also support Trolard's explanation.  Trolard sent his e-mail only to Harwell, not to Lahana, which is not what one would expect if Trolard had intended that the Association dismiss the administrative proceedings.  Moreover, Trolard's reference to "matter" in the e-mail was sufficiently ambiguous that Lahana himself sought clarification about what Trolard meant.  As the trial court logically concluded, "It seems inherently more likely that [Stafford's] counsel would ask opposing counsel to dismiss the suspension against [Stafford], rather than [Stafford's] own administrative appeal."

The trial court's finding that Stafford did not request dismissal of his administrative appeal is supported by substantial evidence.  We therefore must accept it on appeal.  The Association's argument that Trolard withdrew Stafford's appeal is therefore not supported by the record.

4.     **The Trial Court Did Not Misapply the Burden of Proof**

The Association argues that the trial court's ruling suggests it placed the burden of proof on the Association to show that Stafford abandoned or withdrew his appeal, rather than requiring Stafford to prove that the Association failed to fulfill a legal duty in proceeding with the appeal.  The trial court's ruling did not expressly address the burden of proof.  Nevertheless, even if the court placed the burden on the Association to prove that Stafford abandoned or withdrew his appeal, it did not err.  Waiver is an affirmative defense for which the party asserting the defense bears the burden of proof.  (See *Waller supra,* 11

14

Cal.4th at pp. 33–34; see also Evid. Code, § 500 ["Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting"].)

## DISPOSITION

The judgment is affirmed. Stafford is entitled to his costs on appeal.

CERTIFIED FOR PUBLICATION.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.