Filed 3/24/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| KAREN DECK, Individually and as Successor in Interest, etc., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> DEVELOPERS INVESTMENT COMPANY, INC., et al., <br><br> Defendants and Appellants. | G061287 <br><br> (Super. Ct. No. 30-2017-00907787) <br><br> O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Glenn R. Salter, Judge.  Affirmed.  Motion to partially dismiss appeal.  Granted.

Howarth & Smith, Don Howarth, Suzelle Smith and Padraic Glaspy for Defendants and Appellants.

Valentine Law Group, Kimberly A. Valentine, Joseph F. Fighera; Johnson Moore, Jody C. Moore; Niddrie ⏐ Addams ⏐ Fuller ⏐ Singh and Victoria E. Fuller for Plaintiffs and Respondents.

\*　　　\*　　　\*

INTRODUCTION

In this elder abuse case, defendants appeal from an order granting a motion by plaintiffs to compel compliance with prior discovery orders and imposing monetary and issue sanctions. The trial court imposed 11 potentially case-dispositive issue sanctions and $37,575 in monetary sanctions against defendants for having "repeatedly disregarded their obligations in Discovery" and having "repeatedly fought the Court Orders that tell them they must comply." The court-appointed discovery referee, who recommended those sanctions, commented that in his almost 20 years of service as a neutral, mediator, arbitrator, and referee he had never seen "such blatant disregard of discovery and discovery orders."

In the notice of appeal, defendants asserted their appeal included both the monetary sanctions and the issue sanctions. The order imposing monetary sanctions is directly appealable under Code of Civil Procedure section 904.1, subdivision (a)(11) and (12).[1] However, the order imposing issue sanctions is not directly appealable. The issue sanctions are not inextricably intertwined with the monetary sanctions. We therefore grant plaintiffs' motion to dismiss the appeal regarding issue sanctions.

The trial court did not err by imposing monetary sanctions. When, as in the present case, a party unsuccessfully opposes a discovery motion, the trial court must impose monetary sanctions unless it finds the party opposing the motion acted with substantial justification or that other circumstances made the imposition of sanctions unjust. The trial court and discovery referee found precisely the opposite: They found defendants had "continuously shown no respect for the discovery process []or for the Court's orders" and had "blatantly ignored warnings" about the potential serious consequences of their abuse of discovery. The trial court and the discovery referee

_____

[1] All further statutory references are to the Code of Civil Procedure.

concluded the maximum amount of monetary sanctions was warranted for the discovery abuses committed by defendants.

In light of such devastating findings, one would think defendants would show some contrition or at least frankly acknowledge their conduct leading to the imposition of sanctions. Instead, defendants attempt to portray themselves as the victims of excessive discovery demands who are being punished merely for providing untimely discovery responses made, supposedly at great sacrifice, despite the ravages of the COVID-19 pandemic. The trial court and the discovery referee rejected that portrayal and found defendants had engaged in a strategy of "continuous dilatory conduct." Defendants did at last serve discovery responses, but their production, made on the night immediately before the hearing on the discovery motion that led to sanctions, was untimely in the extreme. Whether this production was incomplete is disputed, but, in any case, untimely compliance is not compliance. As the referee and the trial court found, "[t]o suddenly dump volumes of materials on plaintiffs on the eve of the discovery and motion cut off . . . simply cannot pass muster as good faith compliance with Court Orders."

Defendants have failed to establish the trial court should have found they acted with substantial justification or that other circumstances made the imposition of monetary sanctions unjust. Accordingly, we affirm the award of monetary sanctions and dismiss the appeal in all other respects.


ALLEGATIONS

Plaintiffs and respondents are Karen Deck, individually and as successor in interest to Emiko Matsumoto. We refer to them together as Plaintiffs.

Defendants and appellants are Life Care Centers of America, Inc., Life Care Affiliates II, L.P., Developers Investment Company, Inc., El Toro Medical Investors

3

Limited Partnership doing business as Lake Forest Nursing Center, and Forrest L. Preston. We refer to them collectively as Defendants.

The first amended complaint asserted causes of action for negligence/willful misconduct, elder abuse and neglect, violations of the Patients' Bill of Rights (Cal. Code Regs, tit. 22, § 72527), and wrongful death based on the following allegations.

Emiko Matsumoto (the decedent) was born in May 1931. As of December 2016, when she was 85 years old, the decedent was living in a retirement community and, though she suffered from Alzheimer's dementia and other ailments, she was ambulatory and able to conduct daily activities with little assistance. On December 22, 2016, the decedent fell and, as a consequence, suffered a nondisplaced C2 spinal fracture and a fractured humerus. She underwent surgery to repair her humerus and commenced nonsurgical, conservative therapy for her spinal fracture. This therapy included wearing a cervical collar, limitations on movement, and rehabilitation/physical therapy.

Immediately upon her release from a brief hospital stay, the decedent was admitted to the Lake Forest Nursing Center (LFNC) for acute rehabilitation and skilled nursing care to prepare her to return home.

LFNC is a 24-hour skilled nursing care facility that is the doing business as for Defendant El Toro Medical Investors Limited Partnership (Medical Investors). Defendant Life Care Affiliates II, L.P. (Life Care) holds a 99 percent interest in Medical Investors. Defendant Forrest L. Preston holds the remaining 1 percent ownership interest in Medical Investors. Defendant Developers Investment Company, Inc. (DIC) is the corporate general partner of Medical Investors. Defendant Life Care Centers of America, Inc. (LCCA) is the parent corporation of Medical Investors, DIC, and Life Care. LCCA serves as the management company for Medical Investors pursuant to a management agreement in exchange for 6 percent of Medical Investor's annual revenue.

4

Preston owns 100 percent of the shares of LCCA. He is the acting chief executive officer of LCCA and the chairman of its board of directors.

Upon the decedent's admission to LFNC, its staff were on notice from several sources that the decedent was at risk for falls. LFNC staff were aware that the decedent's diagnosis of Alzheimer's dementia and the effects of her pain medication placed her at greater risk for falls. The decedent was dependent on LFNC staff to eat and to get in and out of bed. Staff knew it was necessary for the decedent's cervical collar to be always in place.

Nonetheless, LFNC did not ensure sufficient staffing in number, training, and supervision to meet the decedent's needs with the consequence that necessary interventions were withheld. On several occasions, family members noticed the decedent trying to get out of bed without assistance, the decedent's cervical collar was not in place, and cold food remained untouched on a tray because no one had assisted the decedent in eating it. These problems were communicated to LFNC staff, but no care plan interventions were implemented to address the decedent's risk of falling. Several times, family members attempted to summon staff assistance by illuminating the decedent's call light; on each occasion, it took 45 minutes for staff to respond.

On January 6, 2017, the decedent fell and was found lying face down on the floor. Staff did not call 911 until family members intervened and demanded 911 be called. The decedent was taken to a hospital where, upon examination and assessment, it was determined the decedent's fall had caused a type 3 odontoid fracture, lacerations, and bruising. The decedent was returned to her family's home under hospice care. The decedent passed away on January 29, 2017.

The complaint was premised on the theory that Defendants had made calculated decisions to admit residents requiring a high level of care because those residents generated higher reimbursement rates and payments, yet deliberately had chosen not to employ sufficient staff in numbers, training, and supervision to meet the

5

residents' needs. The complaint alleged LFNC staff knew the decedent was at risk for suffering injury or death from a fall if care were not provided to meet her needs and had failed to develop and implement "care plan interventions individualized to the risks [LFNC] knew [the] Decedent had."

HISTORY OF DISCOVERY DISPUTES

I. *Discovery Referee's Report and Recommendations Nos. 1 and 2*

The trial court appointed a discovery referee (the Referee) who, over five years, issued 11 reports and recommendations based on 82 separate discovery motions. The order on the Referee's report and recommendation No. 11, which addresses Plaintiffs' discovery motion No. 82 (Motion No. 82), is the subject of this appeal. Report and recommendation No. 11 is based upon discovery motions and orders that were the subjects of report and recommendation Nos. 1 through 4 and 6.

In December 2019, the court approved and signed report and recommendation No. 1 and report and recommendation No. 2. Report and recommendation Nos. 1 and 2 addressed 16 discovery motions brought by Plaintiffs: 15 motions to compel further responses to requests for production (motion Nos. 18-21, 23-27, and 29-33) and one motion to compel depositions of party-affiliated witnesses. The Referee concluded the electronically stored information sought by Plaintiffs fell within the scope of discovery, and report and recommendation No. 1 memorialized an agreement between the parties to a process for its production.

The trial court, adopting the Referee's recommendation, for the most part granted all of the motions and ordered Defendants to provide verified discovery responses within 20 days of service of the order. In particular, Defendants were ordered to "give a further verified response in which Defendant produces the 'falls management' policy which was in force and effect during Decedent's admission." In addition, the trial court ordered Defendants to produce 16 witnesses, including their director of nursing, for

6

deposition within 30 days. With respect to all motions to compel further responses to requests for production of documents, the court ordered Defendants to serve further responses within 20 days, to support any claim of privilege with a privilege log, and, if unable to comply, then to serve a further response that complied with section 2031.230.

II. *Discovery Referee's Report and Recommendation Nos. 3 and 4*

In January 2020, the trial court approved and signed report and recommendation Nos. 3 and 4, which addressed 26 motions brought by Plaintiffs: 13 motions to compel further responses to special interrogatories (motion Nos. 1-9, 39-41, 43); seven motions to compel further responses to form interrogatories (motion Nos. 10-14, 16); three motions to compel further responses to requests for production (motion Nos. 37, 38, 42); two motions to compel further responses to requests for admissions (motion Nos. 15, 17); and one motion to compel compliance with a court order (motion No. 44).

The trial court adopted the Referee's recommendation and granted all of the discovery motions. The court ordered Defendants to provide further, verified responses to special and form interrogatories, requests for admissions, and requests for production of documents within 20 days. The court ordered Preston to comply with a court order entered in May 2019 by providing verified discovery responses within 20 days. Although Plaintiffs initially had requested monetary sanctions, the parties agreed to continue the hearing and any decision on that issue.

III. *Discovery Referee's Report and Recommendation No. 6*

In July 2021, the trial court approved and signed report and recommendation No. 6, which addressed 17 motions to compel brought by Plaintiffs; 10 motions to compel further responses to requests for production (motion Nos. 45-47, 50-52, 55-58); three motions to compel further responses to special interrogatories

(motion Nos. 48, 49, 54); three motions to compel further responses to requests for admission (motion Nos. 68-70); and one motion to compel further responses to form interrogatories (motion No. 53).

The trial court for the most part granted all the motions and ordered the Defendants to provide verifications as sought by motion Nos. 45, 46, and 48 through 58 within 20 days. The court found, "The Defendants' continuous failure to provide requisite verification is unacceptable." The court ordered Defendants, within 20 days, to provide documents responsive to Plaintiffs' requests for financial documentation and to provide the names and contact information for "responsible parties" of other residents at their facility who might be potential percipient witnesses. The court ordered Preston to provide code-compliant, verified responses to various discovery requests within 20 days. The court ordered DIC and Life Care to provide Department of Housing and Urban Development documents relevant to the various entities' financial relationships and Plaintiffs' alter ego claims and other records regarding corporate structure and medical records management within 20 days.

Although Defendants had agreed in their opposition papers to provide further responses to various discovery requests, the trial court declined to deem the motions to compel to be moot in those respects. Instead, "[g]iven the discovery battle history in the case," the court ordered Defendants to provide further, verified responses within 20 days. The trial court imposed monetary sanctions against Defendants in the total amount of $7,350 and shifted the cost of the Referee's fees to Defendants.

IV. *Discovery Referee's Report and Recommendation No. 7*

On the same day the trial court approved and signed report and recommendation No. 6, it also approved and signed report and recommendation No. 7, which addressed five motions brought by Plaintiffs to compel compliance with a prior court order (motion Nos. 59-63). Those motions had sought an order to compel

8

Defendants to comply with; (1) report and recommendation No. 1 with respect to motion Nos. 21, 24, 26, 28 through 31, and 34; (2) report and recommendation No. 2 with respect to motion Nos. 18 through 20, 25, 27, and 33; (3) report and recommendation No. 3 with respect to motion Nos. 1 through 17 and 44; (4) report and recommendation No. 4 with respect to motion Nos. 37 through 43; and (5) report and recommendation No. 5 (not an issue in this appeal). Plaintiffs sought issue sanctions and monetary sanctions in the amount of $34,650.

The trial court approved the Referee's recommendation and granted Plaintiffs' motion Nos. 59 through 62. The Referee, and consequently the trial court, found: "I believe some form of sanctions should be imposed against the Defendants—the Defendants only and not their counsel of record—on each of these motions. In my view . . . , Defendants have simply chosen to essentially disregard the work that was done by their then counsel of record and blatantly ignore the Court's orders that were based upon the subject [reports and recommendations]. In so doing, Defendants have thwarted or at least hampered Plaintiffs' rights to discovery, have made the discovery process unnecessarily contentious, and have made the litigation process unacceptably more expensive."

Defendants argued that the COVID-19 pandemic had impaired their ability to comply with the court's discovery orders. The Referee, and consequently the trial court, rejected that claim and found that "Defendants' COVID-19 'defense,'" to be "at best, troubling and at worst shameful." The Referee found: "By failing to comply with Court orders over time, Defendants put themselves behind the COVID '8-ball.' It is difficult to see how they should now benefit from this situation that they could have avoided by timely complying with prior Referee reports that have become this Court's Orders. But for the ravages of the pandemic, this would be a case ripe for issuing doomsday sanctions."

9

Nonetheless, the Referee recognized the COVID-19 pandemic had "affected every aspect of life for all of us for more than 12 months," had "all but shut down access to the Courts," and had a "catastrophic" effect on elder care facilities. The Referee recommended that the trial court impose "the maximum monetary sanctions possible" against Defendants but, rather than impose issue sanctions, "unequivocally warn Defendants that any further disregard of Court Orders will result in serious doomsday sanction consequences, including . . . issue and evidentiary sanctions." By signing report and recommendation No. 7, the trial court imposed $34,650 in monetary sanctions against Defendants, shifted the cost of the Referee's fees to them, and adopted the Referee's findings.

## V. *Discovery Referee's Report and Recommendation Nos. 8 and 9*

In October 2021, the Referee signed and submitted report and recommendation Nos. 8 and 9. In November 2021, the trial court approved and signed report and recommendation Nos. 8 and 9.

Report and recommendation Nos. 8 and 9 denied Defendants' motions for a protective order to "'Restrict the Frequency and Extent of Plaintiffs' Discovery'" and for a hearing on disputes as to various depositions, and recommended the depositions, including Preston's, "shall be scheduled," "without further objection," and "without delay." The Referee found: "Defendants' conduct throughout my tenure as Referee simply does not enable them to complain about discovery motions, completion of depositions, and depositions of key witnesses. Defendants have consistently, repeatedly, unabashedly, and without apology blatantly disregarded nearly every Report & Recommendation and the corresponding Court Orders. To come here now asking me, as Referee, and the Court to insulate them from honestly and completely responding to discovery simply cannot be condoned."

10

The Referee gave this warning: "Though also ignored by Defendants, let me again voice a word of caution about their continuing conduct. Further disrespect of the process will leave me no choice but to report and recommend that the Court impose the Draconian sanctions that I diligently have tried to avoid."

## VI. *Plaintiffs' Discovery Motion No. 82*

While the motion resulting in report and recommendation No. 7 was pending, Defendants retained new counsel and requested a continuance of the hearing date based on their representation that counsel intended "to 'get control of the discovery process and to comply with whatever orders [were] outstanding and to provide [P]laintiffs with responses along with existing documents.'" Defendants new counsel filed four motions seeking to "'Modify and/or Disregard'" report and recommendation Nos. 1 through 4. The Referee recommended denying all four motions, and the trial court approved the Referee's recommendation.

By October 2021, Defendants still had not fully complied with report and recommendation Nos. 1 through 4 and had made no effort to comply with report and recommendation No. 6. Defendants had not paid "a single cent" of the monetary sanctions or the Referee's costs as had been ordered by the court.

In October 2021, Plaintiffs submitted discovery Motion No. 82 to the Referee. At that time, the trial date had been set as December 6, 2021, and the discovery cutoff was in November 2021. Plaintiffs sought an order compelling Defendants to comply with report and recommendation Nos. 1 through 4 and 6, imposing $37,575 in monetary sanctions, and imposing issue sanctions on 11 issues.[2] Motion No. 82

_____

[2] The 11 issues were:
"1. That LCCA controlled the budget of LFNC during Emiko Matsumoto's admission to LFNC;
"2. That LCCA operated, managed, and controlled LFNC during Emiko Matsumoto's admission to LFNC;

11

identified instances in which Defendants' failure to comply with the trial court's discovery orders was hampering their ability to establish the facts pertinent to the issue sanctions requested.

In opposing Motion No. 82, Defendants contended they had produced over 2,000 documents and that 46 depositions had been taken in the case. Defendants admitted they had not complied with report and recommendation Nos. 1 through 4 and 6—Defendants claimed they were "in the process of reviewing the remaining court-ordered documents to produce within the next week or two, along with verified supplemental responses, and they anticipate satisfying [report and recommendation Nos 1 through 4], and hopefully [No. 6], before the hearing on the instant motion." Defendants

---

"3. That LFNC had no Fall Management or Prevention policy and procedure in place during Decedent Emiko Matsumoto's admission to LFNC resulting in her fall;

"4. That Defendants failed to meet a minimum 3.2 Nursing Hours per Patient Day for Each day of Decedent Emiko Matsumoto's admission;

"5. That Defendants failed to provide sufficient nursing staff to provide care and services as required in Decedent Emiko Matsumoto's Care Plan, resulting in her fall;

"6. That Co-Defendants LFNC, LCCA, [Life Care], DIC, and Forrest L. Preston were engaged in a joint venture, a single enterprise, and were alter egos of one another in the time period of Decedent's admission to LFNC;

"7. That Forrest L. Preston, and Officers, Directors, and Managing Agents of LCCA, LFNC, DIC, and [Life Care] authorized and ratified the decision to operate LFNC with insufficient nursing staff during Decedent's admission resulting in her fall on January 6, 2017;

"8. That Forrest L. Preston controlled the operations and business activities of Co-Defendants LCCA, LFNC, [Life Care], and DIC during Decedent's admission to LFNC;

"9. That Defendants LFNC, LCCA, [Life Care], DIC, and Preston's conduct amounts to 'Recklessness'[;]

"10. That LCCA, LFNC, [Life Care], DIC and Preston had care and custody of Decedent during Decedent's admission to LFNC;

"11. That the conduct of LFNC, LCCA, [Life Care], DIC and Preston constituted Malice, Oppression, and Fraud." (Fn. omitted.)

12

also claimed that by the end of the month they would serve the supplemental responses required by report and recommendation Nos. 1 through 4 and 6.

After Plaintiffs had filed Motion No. 82 Defendants began producing the responses and information required of them by report and recommendation Nos. 1 through 4 and 6. Defendants produced information identifying other residents' "responsible parties" on October 15, 2021, two weeks after Plaintiffs filed Motion No. 82, and 50 days after expiration of the deadline set down in report and recommendation No. 6. Close to the end of the business day immediately before the hearing on Motion No. 82, Defendants' counsel served links to dozens of sets of verified and unverified discovery responses that report and recommendation Nos. 1 through 4 and 6 had required Defendants to produce months earlier. Defendants still had not paid any of the monetary sanctions imposed against them.

VII. *Discovery Referee's Report and Recommendation No. 11*

In December 2021, the Referee issued report and recommendation No. 11, the subject of this appeal. The Referee recommended that the trial court grant Motion No. 82, impose monetary sanctions as requested in the amount of $37,575, and impose all requested 11 issue sanctions.

The Referee prefaced the explanation for his ruling with these comments: "Nobody could have anticipated that the task I originally agreed to take on would continue to require the intervention of a Discovery Referee two years down the road. Yes, COVID-19 has intervened, causing untold upheaval in the lives of everyone globally, and particularly impacting our Civil Litigation processes." The Referee firmly believed, however, that Defendants "continuous dilatory conduct," and not the COVID-19 pandemic "is not the primary cause of why we are dealing with the issues raised in Motion [No.] 82."

The Referee recognized that discovery had been "extensive" and Plaintiffs' counsel "will not leave the proverbial stone unturned where the facts appear to warrant excessive exploration." But the Referee did not find that Plaintiffs had propounded excessive discovery. Quite to the contrary, the Referee found: "The very nature of these cases, given the complexities of the subject area and the heightened burden of proof, require comprehensive discovery. The 'business' of caring for the elderly, infirm, difficult patients who more often than not present with innumerable 'co-morbidities', add extra layers that must be sorted through in the quest to find 'the truth.' Though Defendants view it otherwise, 'extensive' discovery called for in this case does not equate to excessive discovery."

The Referee found Defendants had willfully failed to comply with their discovery obligations: "Defendants . . . have hardly once fully provided timely Code compliant responses to any discovery in this case. (This, apparently, is a pattern and practice in several other cases in which these same Defendants are parties.) Now, Defendants cry 'foul' because their strategy of continuous dilatory conduct — their 'hiding the ball' — has put them in a precarious position that directly affects their defense at trial. Perhaps Defendants should have devoted their resources to providing timely answers to difficult questions. Instead, Defendants have repeatedly disregarded their obligations in Discovery and have repeatedly fought the Court Orders that tell them they must comply. Defendants have even blatantly ignored the several warnings given about the potential serious consequences that would likely follow if their abuse of discovery continued."

The Referee acknowledged that over the prior four years Defendants had provided a great deal of discovery and many depositions had been taken. "[H]owever," the Referee stated, Defendants "ask the Court to ignore the fact that almost without exception not one meaningful response to discovery has been timely provided" and "ask

14

the Court to ignore Defendants' continuous refusal to timely and voluntarily comply with the recommendations of the Referee and the corresponding Orders of the Court."

The Referee firmly rejected Defendants' claim that they had satisfied their discovery obligations with the eleventh hour "data dump." The Referee found: "To suddenly dump volumes of materials on Plaintiffs on the eve of the discovery and motion cut off, leaving Plaintiffs without the ability to make any sense, let alone use, of those materials, simply cannot pass muster as good faith compliance with Court Orders." The Referee found those discovery responses "should have been given long before now" and "[p]roviding the 'responses' on the eve of the discovery and motion cut off renders these responses of, at best marginal, utility."

The Referee found Defendants had chosen to do things "their way" and decided "the rules of discovery do not apply to them." Choices are made with the knowledge of their consequences, and "[i]f the discovery process is to have any meaning; if Parties are to have any respect for Orders of the Court, then there must be consequences for choices that are disrespectful of the process." The Referee pointed out that he had cautioned Defendants "many times" but they had "shown no regard" for those cautions. Defendants had been ordered to pay monetary sanctions but had disregarded those orders too and believed instead they could "conduct themselves as they wish[ed] in discovery matters with impunity."

The Referee concluded: "The message to Defendants ought to be that severe sanctions are being imposed not to punish them for their abuse but because there must be a remedy for such discovery abuse. . . . Monetary sanctions alone will not deter future discovery abuse by these Defendants, as they will view it as minimal consequences for their actions that they can afford to pay (if they actually pay monetary sanctions at all). The ultimate decision — whether to grant the requested doomsday sanctions in whole or in part — must rest with the Court. Defendants had demonstrated that they will not respect any recommendations coming from me as Referee. [¶] I have been licensed

15

to practice [law] in this State for nearly 44 years. For the past almost 20 years I have had the privilege and honor to serve as a Neutral, sitting as Mediator, Arbitrator, and of course, as Referee. *Never have I seen such blatant disregard of discovery and discovery Orders as the conduct by these Defendants.* It is disrespectful to the Court, tantamount to contemptuous conduct. It has directly affected the sanctity of our civil justice system and has unfairly prejudiced Plaintiffs. Acknowledging the redundancy, from this Referee's view, there must be a remedy for such discovery abuse to preserve the integrity of our civil justice system." (Italics added.)

VIII. *Trial Court Order on Report and Recommendation No. 11*

Defendants filed objections to Report and Recommendation No. 11. Plaintiffs filed a response to those objections.

Counsel had stipulated to continue the trial date from December 6, 2021 to February 14, 2022. On January 25, 2022, Defendants applied ex parte to continue the trial date on the ground their lead trial counsel was "seriously ill." The trial court granted the ex parte application and continued the trial to June 6, 2022.

On February 2, 2022, Defendants paid Plaintiffs $50,550 "for monetary sanctions." Of that amount, $42,000 had been due and unpaid since July 2021.[3]

On February 7, 2022, the trial court adopted and signed report and recommendation No. 11. Report and recommendation No. 11 was entered as an order that same day.

---

[3] Report and recommendation No. 6 had imposed $7,350 in sanctions, and report and recommendation No. 7 had imposed $34,650 in sanctions. By minute order entered on January 21, 2022, the trial court imposed another $8,550 in sanctions for failing to produce witnesses for depositions. Those three sanction awards totaled $50,550.

IX. *Defendants' Motion for Reconsiderations*

Defendants filed a motion for reconsideration of the order on report and recommendation No. 11. They argued, among other things, that the trial continuance mooted the "timing" concerns and the prejudice sustained by Plaintiffs as a result of Defendants' conduct. Plaintiffs argued in opposition that the trial continuance did not extend the discovery cut off of November 8 and, therefore, trial continuance had no effect on the finding that Defendants' late production was of marginal utility. At the hearing, Plaintiffs' counsel asserted that Defendants had not complied fully with the discovery orders and Defendants' last-minute "data dump . . . did not produce all of the documents that had been requested, there were still . . . 12 sets of unverified discovery, five of which related to Forrest [L.] Preston, two additional sets of discovery that [were] never answered, and the majority of that discovery . . . was 672 days late."

The trial court denied Defendants' motion for reconsideration. The court found that Defendants had not made the initial showing for reconsideration required by section 1008, many of Defendants' arguments were "based on fundamental misstatements of facts," and other arguments were "little more than an attempt to reargue the ruling." The court also found: "As the Discovery Referee pointed out in his statement as to why issue sanctions should be imposed for the repeated discovery abuse, *the Defendants have consistently acted as though the discovery rules and the orders of the court did not apply to them*. [The Referee] then went through an exhaustive list of the discovery abuse spanning for two years—which he concluded was abuse *by the Defendants*, not counsel, and was *a calculated response to the elder abuse allegations made against them*. Defendants repeatedly failed to comply with discovery orders; *the issuance of monetary sanctions had not corrected their behavior* and, as the Discovery Referee opined and this court agreed, it was highly *unlikely the Defendants were ever going to comply with any discovery* no matter how many chances they were afforded by the court. . . . This court has signed numerous orders based on the Discovery Referee's

17

various Recommendations—some after a hearing—and it finds, based on its own review of the record, *that the Discovery Referee's conclusions are accurate and should be followed*."

The trial court concluded: "At some point, it is flagrant injustice not to impose issue sanctions. Such an order for issue[] sanctions is not issued lightly. But the time [has] finally come."

Defendants timely appealed from the order entered on February 7, 2022, on report and recommendation No. 11. The notice of appeal states: "This appeal will include both the monetary sanctions portion of the Order and all other portions of the Order, including the issue preclusion sanctions imposed therein, which are based on the same conduct that led to the issue preclusions sanctions, and therefore inextricably intertwined with the monetary sanctions and also immediately appealable."

STANDARD OF REVIEW

"Orders regarding discovery are reviewed under the abuse of discretion standard. [Citations.] The trial court has broad discretion in deciding whether to impose sanctions and in setting the amount of monetary sanctions." (*Cornerstone Realty Advisors, LLC v. Summit Healthcare REIT, Inc.* (2020) 56 Cal.App.5th 771, 789 (*Cornerstone*).)

The test for abuse of discretion is traditionally recited as whether the trial court's decision exceeded the bounds of reason. (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478–479.) In more practical terms, the abuse of discretion standard measures whether, in light of the evidence, the trial court's decision "'falls within the permissible range of options set by the legal criteria.'" (*Bank of America, N.A. v. Superior Court* (2013) 212 Cal.App.4th 1076, 1089.) The scope of the court's discretion is limited by law governing the subject of the action taken. (*Ibid*.) An action that transgresses the bounds of the applicable legal principles is deemed an abuse of discretion. (*Ibid*.) A trial

18

court's decision is an abuse of discretion if it is based on an error of law. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311; *Pfizer Inc. v. Superior Court* (2010) 182 Cal.App.4th 622, 629.)

"The trial court's factual findings are reviewed under the substantial evidence standard while the trial court's legal conclusions are reviewed de novo. [Citation.] It is up to the trial court to weigh the evidence, resolve conflicts in it, and assess the credibility of witnesses. [Citation.] The reviewing court resolves any evidentiary conflicts most favorably to the trial court's ruling [citation], and, if more than one reasonable inference can be deduced from the facts, the reviewing court must accept the inference supporting the trial court's decision [citation]." (*Cornerstone, supra*, 56 Cal.App.5th at p. 789.)

## DISCUSSION

I. *Plaintiffs' Motion for Partial Dismissal of the Appeal is Granted*

Before briefing in this matter commenced, Plaintiffs filed a motion for dismissal of Defendants' appeal from the order imposing issue sanctions on the ground it was not an appealable order. Plaintiffs argued the appeal from the order imposing issue sanctions was severable from the order imposing monetary sanctions, which was directly appealable, and the Court of Appeal may order partial dismissal of a severable appeal.

After receiving Defendants' opposition to the motion, we issued an order stating we would decide Plaintiffs' motion to dismiss in conjunction with the merits of the appeal. Our consideration of the merits of the appeal leads us now to conclude the motion for partial dismissal must be granted.

A. The Order Imposing Issue Sanctions Is Not Directly Appealable

"The right to appeal is wholly statutory." (*Dana Point Safe Harbor Collective v. Superior Court* (2010) 51 Cal.4th 1, 5.) A reviewing court has jurisdiction

19

only of an appeal from a judgment or order made expressly appealable by statute. (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 696.) "Unless an order is expressly made appealable by a statute, this court has no jurisdiction to consider it." (*Levinson Arshonsky & Kurtz LLP v. Kim* (2019) 35 Cal.App.5th 896, 903.)

Under section 904.1, an appeal may be taken from "an interlocutory judgment directing payment of monetary sanctions by a party or an attorney for a party if the amount exceeds five thousand dollars ($5,000)" (*id.*, subd. (a)(11)) or from "an order directing payment of monetary sanctions by a party or an attorney for a party if the amount exceeds five thousand dollars ($5,000)" (*id.*, subd. (a)(12)). There is no comparable statutory right to appeal from a prejudgment discovery order. (*Montano v. Wet Seal Retail, Inc.* (2015) 7 Cal.App.5th 1248, 1259; *Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1432 (*Doe*).) Instead, discovery orders are appealable as part of an appeal from a final judgment. (*Hanna v. Little League Baseball, Inc.* (2020) 53 Cal.App.5th 871, 875, fn. 6; *Oiye v. Fox* (2012) 211 Cal.App.4th 1036, 1060.)

Thus, the monetary sanctions imposed by the order on report and recommendation No. 11 are directly appealable under section 904.1, subd. (a)(11) and (12). But other than the monetary sanctions, the order on Report and Recommendation No. 11, including the issue sanctions, is not directly appealable.

B. The Monetary Sanctions and the Issue Sanctions Are Not Inextricably Intertwined

A limited exception has been recognized to permit review of an order granting terminating sanctions as part of an appeal from an order directing payment of monetary sanctions in an amount greater than $5,000 if the monetary sanctions were based on the same conduct that led to the terminating sanctions *and* "the two are inextricably intertwined." (*Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th

20

262, 276 (*Mileikowsky*), disapproved on another ground in *Mileikowsky v. West Hills Hospital & Medical Center* (2009) 45 Cal.4th 1259, 1273.)

In *Mileikowsky* the plaintiff appealed from the trial court order issuing terminating sanctions against the plaintiff for repeated discovery violations and awarding the defendants $8,500 in monetary sanctions. (*Mileikowsky, supra*, 128 Cal.App.4th at pp. 264, 273-275.) The Court of Appeal denied the defendants' motion to dismiss the appeal but in doing so limited the scope of appeal to issues pertaining to the monetary sanctions. (*Id*. at pp. 275-276.) But when deciding the merits of the appeal, the Court of Appeal realized "the monetary sanctions were based on the same conduct that led to terminating sanctions, and the two are inextricably intertwined." (*Id.* at p. 276.) In particular, the plaintiff had challenged the monetary sanctions on the ground they were based on the fees and costs incurred in prosecuting the motion for terminating sanctions, and that motion should have been denied. (*Ibid.*) The court therefore proceeded to address whether the motion for terminating sanctions was well taken. (*Id*. at p. 276.) "[A]lthough we attempted to limit our review to issues pertaining to the monetary sanctions awarded, our reasoning necessarily encompasses the propriety of granting terminating sanctions." (*Id*. at p. 264.)

Defendants argue *Mileikowsky* grants this court jurisdiction to decide the appeal from the issue sanctions because the terminating sanctions and the monetary sanctions were based on the same conduct. Defendants ignore the second half of the condition; that is, the monetary sanctions and terminating sanctions "are inextricably intertwined." In *Mileikowsky*, the plaintiff challenged the monetary sanctions and the issue sanctions on a single ground—the trial court erred by granting the motion for terminating sanctions. (*Mileikowsky, supra*, 128 Cal.App.4th at pp. 276, 280.) The propriety of both the terminating sanctions and the monetary sanctions therefore depended on whether the trial court erred by granting the motion for terminating sanctions. The terminating sanctions and the monetary sanctions were inextricably

21

intertwined because a decision on the appeal from the monetary sanctions also resolved the appeal from the terminating sanctions.

Although the monetary sanctions and the issue sanctions in the present case are, to a large extent, based on the same conduct, they are not inextricably intertwined. Defendants are not arguing the trial court should have denied Plaintiffs' Motion No. 82—an argument which, if successful, would resolve the propriety of both monetary and issue sanctions. Monetary sanctions and issue sanctions are different remedies, imposed for different reasons, and the propriety of each is assessed under different factors. As we shall explain, our reasoning for upholding the monetary sanctions does not "necessarily encompass[]" the propriety of imposing issue sanctions. (*Mileikowsky, supra*, 128 Cal.App.4th at p. 264.)

Because there is no question that Defendants unsuccessfully opposed Motion No. 82, the only issue with respect to imposition of monetary sanctions is whether the trial court should have found Defendants acted with substantial justification or other circumstances would make monetary sanctions unjust. (*Cornerstone, supra*, 56 Cal.App.5th at p. 790.) Defendants argue they acted with substantial justification because they ultimately provided a full though untimely production, Plaintiffs had propounded excessive discovery, the COVID-19 pandemic and changes in counsel impaired Defendants' ability to comply with their discovery obligations, they had produced an enormous amount of documents, and the trial court did not independently analyze report and recommendation No. 11.

The propriety of the issue sanctions depends on the resolution of issues and assessment of factors other than whether Defendants acted with substantial justification or monetary sanctions otherwise would be unjust. Defendants challenge the issue sanctions on the following grounds: Issue sanctions can only be imposed after the sanctioned party has violated a court order compelling discovery; any prejudice to Plaintiffs from late production of discovery was cured by the continuance of the trial

22

date; the issue sanctions are punitive and do not fit the violation; the issue sanctions provided Defendants with a windfall; there is no connection between any specific discovery that was untimely and the particular issue sanction imposed; and, the trial court did not independently consider the propriety of issue sanctions but "rubber stamped" the Referee's report. Of those grounds, only the final one and, to a limited extent, the matter of prejudice, apply to the monetary sanctions, and our analysis and application of those two grounds are not determinative of the propriety of the issue sanctions.

Our analysis supporting the affirmance of the monetary sanctions demonstrates they are untwined from the issue sanctions. In part II of the Discussion section, we reject each of the grounds on which Defendants challenge the monetary sanctions and conclude the trial court did not err by declining to find that Defendants acted with substantial justification or that other circumstances would have made monetary sanctions unjust. Our analysis and the affirmance of monetary sanctions does not lead inextricably to the resolution of the propriety of the issue sanctions because we do not address several issues necessary to determine the propriety of their issuance.

The appeal from the order imposing monetary sanctions therefore can be examined and resolved independently of the order imposing issue sanctions. Put another way, we can, and do, resolve the issue of the propriety of the monetary sanctions without also resolving the propriety of the issue sanctions.

An analogous case is *Doe, supra*, 200 Cal.App.4th 1424. In *Doe*, the trial court imposed monetary sanctions in the amount of $5,250 against the defendant after finding the defendant, without substantial justification, had failed to comply with an earlier discovery order and had opposed the plaintiff's motion to compel compliance with that order. (*Doe*, at pp. 1427, 1432.) The trial court directed the defendant to comply with the prior discovery order by producing documents regarding claims of sexual harassment or abuse by its coaches with redactions limited to specific, identifying information. (*Id*. at pp. 1430-1431.) The defendant appealed from an order "'regarding

23

the production of documents and payment of monetary sanctions in the amount of $5,250.00.'" (*Id*. at p. 1432.) The plaintiff moved for dismissal of the appeal insofar as it concerned the nonappealable provisions of the discovery order. (*Ibid*.)

Although the Court of Appeal declined to dismiss the appeal, it concluded that "issues unrelated to the propriety of the monetary sanction are not cognizable" and limited its review to "that portion of the [discovery] order imposing a monetary sanction of over $5,000." (*Doe, supra*, 200 Cal.App.4th at p. 1433.) The *Doe* court disagreed with the defendant's assertion that, as in *Mileikowsky*, the appeal implicated the entire discovery order. (*Doe*, at p. 1433.) The propriety of the sanctions order turned on whether the defendant had acted with substantial justification—that is; whether the defendant had reasonably interpreted the trial court's prior discovery and protective orders—and whether the trial court should have conducted an in camera inspection before imposing monetary sanctions. (*Ibid*.) Those issues were not intertwined with the issue of whether the order compelling compliance with the prior discovery order was proper in light of third party privacy rights. (*Ibid*.)

The present appeal, as in *Doe*, and unlike *Mileikowsky,* does not implicate the entire discovery order. The propriety of the monetary sanctions turns on whether Defendants acted with substantial justification and whether monetary sanctions otherwise would be unjust. Those issues are not the same as, and not intertwined with, the issue whether imposing issue sanctions on top of the monetary sanctions was proper.

Defendants argue "public policy consideration here counsel strongly in favor of addressing the propriety of the sanctions order once in a single appeal." The right to appeal is entirely statutory: Public policy alone cannot confer the right to an immediate appeal of a statutorily nonappealable order.

24

C. Partial Dismissal Is Appropriate Because the Appeals Are Severable

"Respondent can move for *partial* dismissal of a portion of the appeal, as long as the resulting partial appeal would be from *severable* portions of the judgment." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2022) ¶ 5:38, p. 5-23.) "'The test of whether a portion of a judgment appealed from is so interwoven with its other provisions as to preclude an independent examination of the part challenged by the appellant is whether the matters or issues embraced therein are the same as, or interdependent upon, the matters or issues which have not been attacked.'" (*Gonzalez v. R.J. Novick Construction Co., Inc.* (1978) 20 Cal.3d 798, 805-806.)

Dismissal of the appeal from the issue sanctions is permissible because the resulting appeal would be from the imposition of monetary sanctions, which is a severable part of the order on report and recommendation No. 11. An order awarding sanctions in an amount greater than $5,000 is by statute severable and immediately appealable. (§ 904.1, subd. (a)(11) & (12).) As we have explained, the appeal from the order imposing monetary sanctions can be examined independently of the order imposing issue sanctions.

II. *The Trial Court Did Not Err by Imposing Monetary Sanctions*

Code of Civil Procedure section 2030.030 authorizes a trial court to impose monetary sanctions, issue sanctions, evidence sanctions, or terminating sanctions against anyone engaging in conduct amounting to a "misuse of the discovery process." (*Ibid.*) As relevant here, misuses of the discovery process include "[f]ailing to respond or to submit to an authorized method of discovery" (§ 2023.010, subd. (d)); "[m]aking, without substantial justification, an unmeritorious objection to discovery" (*id.*, subd. (e)); "[m]aking an evasive response to discovery" (*id.*, subd. (f)); "[d]isobeying a court order to provide discovery" (*id.*, subd. (g)); and "[m]aking or opposing, unsuccessfully and without substantial justification, a motion to compel or to limit discovery" (*id.*, subd. (h)).

25

"The court may impose a monetary sanction ordering that one engaging in the misuse of the discovery process, or any attorney advising that conduct, or both pay the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct." (§ 2023.030, subd. (a).) Reasonable expenses may include attorney fees, filing fees, referee fees, and other costs incurred. (*Ibid.*) A court shall impose a monetary sanction against "any party, person, or attorney" who unsuccessfully opposes a motion to compel a further response to interrogatories, a motion to compel a further response to an inspection demand, a motion to compel compliance with an inspection demand, or a motion to compel further response to requests for admissions "unless [the court] finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust." (§§ 2030.300, subd. (d), 2031.310, subd. (h), 2031.320, subd. (b), 2033.290, subd. (d).)

Monetary sanctions, if warranted, are mandatory: "If a monetary sanction is authorized, 'the court *shall impose* that sanction' unless the court finds that the person subject to the sanction either acted with substantial justification or imposition of sanctions would be unjust under the circumstances. [Citation.] '[M]onetary sanctions, in an amount incurred, including attorney fees, by anyone as a result of the offending conduct, *must be imposed* unless the trial court finds the sanctioned party acted with substantial justification or the sanction is otherwise unjust.'" (*Cornerstone, supra*, 56 Cal.App.5th at p. 790.)

Defendants unsuccessfully opposed Plaintiffs' motion No. 82. Thus, the monetary sanctions were mandatory unless the trial court found Defendants had acted with substantial justification or that other circumstances would make imposition of monetary sanctions unjust. Neither the trial court nor the Referee made either finding; to the contrary they concluded the maximum amount of monetary sanctions was warranted.

Defendants argue they acted with substantial justification or monetary sanctions were unjust, for six reasons: (1) Defendants provided lengthy discovery

26

responses which, though untimely, satisfied their discovery obligations under report and recommendation Nos. 1 through 4 and 6; (2) Defendants were subject to an "inordinate discovery burden not proportional to the needs of this case"; (3) Defendants undertook "extraordinary efforts to comply with the discovery orders" amidst the disruptions caused by the COVID-19 pandemic; (4) Defendants twice had to change counsel during the course of the litigation; (5) due to the continuance of trial, Plaintiffs suffered no prejudice from Defendants' tardy production of documents; and (6) the trial court "made no attempt to independently analyze the discovery Referee's findings or to consider the basis for the same, including under the new circumstances in the case."

We first address Defendants' sixth contention—that the trial court did not independently analyze report and recommendation No. 11—because it impugns the trial court's integrity. A trial court must independently review a referee's report and may not "abdicate[] its judicial responsibility by simply entering an order on the referee's report as though it was a binding decision of the court itself." (*Rockwell Internat. Corp. v. Superior Court* (1994) 26 Cal.App.4th 1255, 1270.) Defendants are claiming the trial court so abdicated its responsibility when, they say, it "simply rubber-stamped verbatim the issue sanctions requested by Plaintiffs." That is a challenge to the court's integrity, a serious charge indeed. This court has made clear, "[i]mpugning the integrity of the trial judge without facts is rarely a good idea [citation], and serious accusations against a trial judge, such as these, had better be supported by concrete evidence." (*Cornerstone, supra*, 56 Cal.App.54th at p. 793.) The only evidence offered by Defendants is that the trial court approved report and recommendation No. 11 without change. The court's approval of a referee's report and recommendation does not establish the trial court failed to comply with its obligation to independently review the report and consider the referee's findings.

Moreover, the record affirmatively establishes that the trial court fulfilled its duty to independently consider report and recommendation No. 11. During the

27

hearing on Defendants' motion for reconsideration, the trial court explained: "I started in this case about discovery referee report, I think, number 7—number 6, number 7, around in there. And I read the referee's report, and I thought, gee that seems awfully harsh. And then I started reading the old reports. And then as the reports kept coming in, you realize the referee truly had his pulse on this particular case, and his final recommendation, I think is absolutely correct. I don't really think there is much to disagree about on it."

Defendants argue monetary sanctions against them were impermissible because on the night before the hearing on Motion No. 82 they served several lengthy discovery responses which they claim constituted a "full but untimely production." Untimely compliance is not compliance. And the untimeliness in this case was extreme and the product of bad faith. For months, in some cases years, Defendants failed to produce documents and discovery responses sought by discovery requests and as required by court orders. Only after Plaintiffs were forced to bring their Motion No. 82, and only on the eve of the hearing on the motion, did Defendants produce the long-awaited and bitterly fought for discovery responses. The finding of the referee and the trial court, quoted in the introduction section and part VII of the history of discovery disputes section, bears repeating: "To suddenly dump volumes of materials on Plaintiffs on the eve of the discovery and motion cut off . . . simply cannot pass muster as good faith compliance with Court Orders."

It is highly disputed whether the last-minute production was full. At the hearing on Defendants' motion for reconsideration, Plaintiffs' counsel stated that 12 sets of discovery remained unverified and two sets were never answered. Defendants contend otherwise. We need not decide whether the last-minute discovery production was full: It is enough that it was untimely in the extreme and only done once Plaintiffs had incurred the cost of bringing a motion to compel.

Defendants argue their actions were substantially justified because they had been subject to "an inordinate discovery burden," had produced over 25,000 pages of documents, and had submitted more than 40 people to depositions. The Referee and the trial court, while recognizing Plaintiffs had engaged in extensive discovery, found that Plaintiffs' discovery was not excessive but was justified by "the complexities of the subject area and the heightened burden of proof." Defendants have offered no reason for us to disagree with that finding. Defendants' participation in discovery and compliance with some discovery obligations did not excuse compliance with other discovery obligations. Defendants did not have the option to pick and choose which discovery obligations to honor.

If Defendants believed discovery was oppressive, their recourse was to seek a protective order. At one-point Defendants did move for a protective order "to restrict the frequency and extent of Plaintiffs' discovery." (Some capitalization omitted.) By approving report and recommendation No. 8, the trial court denied that motion with the comment that "Defendants have consistently, repeatedly, unabashedly, and without apology disregarded nearly every Report & Recommendations and the corresponding Court Orders."

Defendants contend they acted with substantial justification because the COVID-19 pandemic severely impaired their ability to comply with their discovery obligations. The Referee and the trial court firmly rejected that contention. While recognizing the upheaval caused by the COVID-19 pandemic, the Referee and the trial court found it was not the cause of Defendants' failure to comply with discovery orders; instead, the Referee and the trial court found that Defendants had engaged in a strategy of "continuous dilatory conduct."

Defendants contend they acted with substantial justification because "in the middle of the proceedings below, [Defendants] lost their counsel not once but two times." This is no justification, and it is not true. In August 2020, Defendants associated a

29

*second* law firm to represent them in this matter. Within a week, Defendants' original counsel substituted out, leaving the associated law firm as counsel of record. Defendants were never left without counsel, and the substitution was accomplished over a year before Plaintiffs brought Motion No. 82.

The second loss of counsel was in January 2022—after the Referee had prepared and submitted report and recommendation No. 11—when Defendants' primary trial counsel claimed to be seriously ill. Due to counsel's illness, Defendants sought a trial continuance but in doing so never mentioned whether counsel's illness would affect their ability to comply with their ongoing discovery obligations. The attorney who had appeared on Defendants' behalf through most of the discovery disputes and had signed most of Defendants' oppositions to Plaintiffs' discovery motions was not the reason for the trial continuance.

Finally, Defendants argue they were not subject to monetary sanctions because, due to the continuance of trial, Plaintiffs suffered no prejudice from Defendants' tardy production of documents. A prevailing party on a motion to compel further responses to discovery requests need not show prejudice in order to recover monetary sanctions. Successfully bringing the motion is sufficient to entitle the prevailing party to recover monetary sanctions unless the trial court finds the party unsuccessfully opposing the motion acted with substantial justification or the sanction "'is otherwise unjust.'" (*Cornerstone, supra*, 56 Cal.App.5th at p. 790.)

Even if prejudice were somehow relevant, the trial continuance in this case was unrelated to whether Defendants acted with substantial justification in opposing Motion No. 82 or in the way they saw fit to comply with their discovery obligations. Monetary sanctions are intended to compensate a litigant for expenses incurred as a result of another litigant's misuse of the discovery process. (§ 2023.030, subd. (a).) As a result of Defendants' misuse of the discovery process, Plaintiffs were forced to incur the

30

expense of bringing and pursuing Motion No. 82, and those expenses were incurred long before, and irrespective of, the later continuance of the trial date.

## DISPOSITION

The order imposing monetary sanctions is affirmed. The appeal is dismissed in all other respects. Respondents shall recover costs on appeal.

SANCHEZ, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

DELANEY, J.